# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Selective Insurance Company of South
Carolina,

       Plaintiff/Counter-defendant,

v.

Amit Sela,

       Defendant/Counter-claimant.

**Case No. 16-cv-4077 (PJS/SER)**

**ORDER**

---

      Kristi K. Brownson and Aaron M. Simon, Esqs., Brownson Norby, PLLC, Minneapolis, Minnesota, for Plaintiff.

      Christopher H. Yetka, Esq., Barnes & Thornburg LLP, Minneapolis, Minnesota, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

      The above-captioned case comes before the undersigned on Defendant Amit Sela's ("Sela") Motion for Leave to Amend Counterclaims and Add Claim for Bad Faith Under Minn. Stat. § 604.18 ("Motion to Amend") [Doc. No. 88]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court grants Sela's Motion to Amend.

## I.    BACKGROUND

      Sela is the policy holder of a homeowners' insurance policy (the "Policy") that Selective issued to cover the period of July 27, 2014, to July 27, 2015. (Second Am. Compl. & Jury Demand, "Second Am. Compl.") [Doc. No. 34 ¶ 7]. The Policy covers a residence in Minnetonka, Minnesota (the "Property"), which Sela owns. (*Id.* ¶ 3).

On July 8, 2015, Sela reported that the Property's roof was damaged in a June 29, 2015, hail storm. (*Id.* ¶ 15). No party disputes that the Property suffered damage from the hail storm. Instead, the issue in this lawsuit is whether the terms of an exclusion in the Policy regarding an insured's intentional concealment or misrepresentation allows Selective to avoid paying Sela's claim. *See* (*id.* ¶ 33).

As part of this dispute, Sela filed his Answer to Second Amended Complaint and Counterclaims ("Answer & Counterclaims") [Doc. No. 37]. Relevant to the motion before the Court, Sela reiterated that "there is no dispute that the 2015 storm caused at least some property damage." (Answer & Countercls. ¶ 60). Furthermore Sela asserted that the insurance policy at issue "contain[ed] an Appraisal provision stating: If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss." (*Id.* ¶ 65) (internal quotation marks omitted). "In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other." (*Id.*). If the appraisals differ, they are submitted to an umpire—agreed upon by the appraisers—who will adjudicate the dispute. *See* (*id.*). "After receiving Selective's [notification that it was denying Sela's claim,] Mr. Sela made a written demand for appraisal for the loss. Selective refused to participate in such appraisal." Sela requested the appraisal after Selective filed this lawsuit, but at no time did Selective inform Sela that it was declining coverage until it filed its Complaint. *See* (Order Dated Oct. 10, 2017) [Doc. No. 85 at 5] ("December 2, 2016: Selective notified Sela, through counsel, that it is denying Sela's claim and initiated the instant lawsuit. (Email, Ex. G, Yetka Decl. – 57) [Doc. No. 57-1 at 55]; *see also* (Compl. & Jury Demand) [Doc. No. 1].") (*Id.* ¶ 66). Selective instead filed this lawsuit on December 2, 2016, seeking to avoid payment under the Policy. *See generally* (Compl. & Jury Demand) [Doc. No. 1].

Sela now moves the Court to amend his Answer and Counterclaims to add a claim for bad faith denial of insurance coverage in violation of Minnesota Statutes section 604.18. *See* (Am. Answer to Second Am. Comp. & Countercls., "Am. Answer & Countercls.") [Doc. Nos. 68-1, 68-2] (proposed Amended Answer and Counterclaims and a redlined version showing differences between the Answer and Counterclaims and the Amended Answer and Counterclaims, respectively). Sela's proposed amendments are directed solely to the addition of his counterclaim for bad faith denial of insurance coverage. *See generally* (Am. Answer & Countercls.) (adding paragraphs eighty-two to ninety-one to incorporate a counterclaim for bad faith denial of insurance coverage).

"Recent decisions in this District for adding claims for punitive damages under a similar standard in Minnesota Statutes section 549.191 have yielded different results using the framework articulated in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)." (Text Only Order Dated Apr. 9, 2018) [Doc. No. 107]. In light of these different results, the Court requested "that the parties submit supplemental briefing as to whether Sela's Motion to Amend—in light of *Shady Grove*—should be analyzed under Rule 15 of the Federal Rules of Civil Procedure or Minnesota Statute section 604.18." *Id.*

In the supplemental briefing, both parties agree that section 604.18 should control Sela's Motion to Amend. *See* (Def.'s Br. Responding to Apr. 8, 2018 Order, "Sela's Suppl. Br.") [Doc. No. 109]; (Pl. Selective Insurance Company of South Carolina's Suppl. Mem. of Law on the Legal Standard Applicable to Def.'s Mot. to Amend to Add a Claim for Bad Faith, "Selective's Suppl. Br.") [Doc. No. 110]. In particular, both parties assert that Rule 15 and section 604.18 can co-exist, in large part, because Rule 15 is "discretionary." *See, e.g.*, (Sela's Suppl. Br. at 1, 3, 5–6); (Selective's Suppl. Br. at 4–9). Both parties assert that "[i]f Minn. Stat. § 604.18, subd. 4 'and

3

Minnesota Rule 15.01 can both apply in the state court for their separate purposes, so too, section [604.18, subd. 4] and Federal Rule 15(a) may both apply in federal court in a diversity action.'" *See* (Sela's Suppl. Br. at 4) (quoting *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, Civ. No. 3-89-28 (BPB/DDA), 1990 WL 36142, *2 (D. Minn. Mar. 22, 1990) (Becker, Mag. J.) (alterations in original)); *see also* (Selective's Suppl. Br. at 7 n.4). Furthermore, both parties raised concerns about potential forum shopping in support of their respective conclusions. *See* (Sela's Suppl. Br. at 2); (Selective's Suppl. Br. at 10–12). Understandably, despite the similarities in their arguments related to what standard to apply, the parties disagree as to the outcome of applying Rule 15 or section 604.18. *See* (Sela's Suppl. Br. at 6–7); (Selective's Suppl. Br. at 12–15).

## II.      DISCUSSION

As stated earlier, the initial issue before this Court is what legal standard controls amendments to the pleadings in a diversity case: Rule 15 of the Federal Rules of Civil Procedure or Minnesota Statute section 608.14. Rule 15 governs amendments of pleadings generally in federal cases and specifies that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). By contrast, Minnesota Statute section 608.14 governs situations in which a party wishes to add a claim for bad faith denial of insurance coverage in Minnesota state court and requires that the moving party establish, by prime facie evidence, that the nonmoving party is liable under the statute. *See* Minn. Stat. § 604.18, subdivs. 2, 4. More specifically, section 608.14 requires that amendments "must be accompanied by one or more affidavits showing the factual basis for the motion." *Id.* subdiv. 4.

The Court understands that because it has diversity jurisdiction, the law of Minnesota generally applies. *See, e.g.*, *Prudential Ins. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007)

(stating that generally "[a] district court sitting in diversity applies the law . . . of the state in which it sits." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))). But,

> [w]hen a situation is covered by one of the Federal Rules, . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Hanna v. Plumer*, 380 U.S. 460, 471 (1965); *see also Burlington N. R.R. v. Woods*, 480 U.S. 1, 4–5 (1987) ("The initial step is to determine whether, when fairly construed, the scope of [the] Federal Rule . . . is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court . . . ." (internal quotation marks omitted)). More recently, in *Shady Grove*, the Supreme Court provided additional clarification regarding its holdings in *Hanna* and *Burlington N. R.R.*, stating that a court "must first determine whether [the Federal Rule] answers the question in dispute." 559 U.S. at 398. In light of *Shady Grove*, the question thus becomes whether the framework for considering amendments embodied in Rules 8, 9, 12, and 15 "answers the question" of whether Sela may amend his Answer and Counterclaims and if it does, whether Rules 8, 9, 12, and 15 are valid in view of the Rules Enabling Act, codified at 28 U.S.C. § 2072, or other constitutional restrictions. *See id.*

The issue of a section 604.18 amendment parallels the procedure for amending pleadings under Minnesota Statutes section 549.191, governing amendments to add punitive damages claims under Minnesota law. Courts in this District have routinely applied the requirements of section 549.191 and not the Federal Rules in diversity cases. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832, at *1 n.1 (D. Minn. July 27, 2017) (Noel, Mag. J.) (citing cases). Section 604.18 is more recently enacted than its punitive-damages sister statute. *Compare generally* Minn. Stat. § 549.191

(enacted in 1986), *with* Minn. Stat. § 604.18 (enacted in 2008). Nevertheless, like section 549.191, courts in this District have held that section 604.18 controls in the context of motions to amend pleadings.[1] This Court is not aware of any court in this District addressing *Shady Grove* when determining whether the Federal Rules of Civil Procedure or section 604.18 controls when a party seeks to add a claim for bad faith. The only cases of which this Court is aware that makes mention of a potential conflict with the Federal Rules of Civil Procedure are *Brown*, 2013 WL 12308196, and *Gordon v. State Farm Fire & Cas. Co.*, No. 11-cv-3176 (JRT/LIB), 2012 WL 3848409 (D. Minn. Aug. 17, 2012) (Brisbois, Mag. J.), which addressed a related issue of whether to grant a motion to strike. *See Gordon*, 2012 WL 3848409 at *1, 5. The analysis in *Gordon*, however, is premised largely on decisions in this District predating *Shady Grove* under section 549.191 and not in light of *Shady Grove* itself. *See Gordon*, 2012 WL 3848409, at *3 n.3. Likewise, the analysis in *Brown* does not consider a potential conflict between the Federal Rules and section 604.18 under *Shady Grove*. *See Brown*, 2013 WL 12308196 at *2.

Furthermore, the Court notes that recent decisions in this District have reached opposite results when considering whether Rule 15 or section 549.191 controls. *Compare In re Bair Hugger*, 2017 WL 5187832 (finding the court must apply Rule 15 of the Federal Rules of Civil Procedure), *with* Order Dated Mar. 8, 2018, *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB) (D. Minn.) [Doc. No. 534] (Brisbois, Mag. J.) (finding the

---

[1]     *See, e.g.*, *Borchardt v. State Farm Cas. Co.*, No. 16-cv-55 (PJS/KMM), 2017 WL 8315883 (D. Minn. Apr. 26, 2017) (Menendez, Mag. J.); *Nw. Mut. Life Ins. v. Weiher*, No. 12-cv-1430 (SRN/JSM), 2016 WL 6917204 (D. Minn. July 11, 2016) (Mayeron, Mag. J.); *Cich v. Nat'l Life Ins.*, No. 11-cv-0742 (DWF/JJG), 2012 WL 12848436 (D. Minn. Feb. 15, 2012) (Graham, Mag. J.); *Collins v. Depositors Ins.*, No. 12-cv-3133 (PAM/LIB), 2013 WL 12142580 (D. Minn. Dec. 2, 2013) (Brisbois, Mag. J.); *Brown v. State Farm Mut. Auto. Ins.*, No. 12-cv-3058 (DWF/TNL), 2013 WL 12308196 (D. Minn. Oct. 29, 2013) (Leung, Mag. J.); *Arias v. Am. Family Mut. Ins.*, No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854 (D. Minn. Oct. 28, 2013) (Graham, Mag. J.); *Natureview Vista Twinhome Assoc. v. Phoenix Ins.*, No. 09-cv-1893 (RHK/JJK), 2010 WL 11537462 (D. Minn. Mar. 30, 2010) (Keyes, Mag. J.).

court must apply Minn. Stat. § 549.191). These differing opinions on the related issue of whether Rule 15 or section 549.191 controls in view of *Shady Grove* prompted this Court to consider the question of whether the Federal Rules or section 604.18 controls.

This Court concludes the relevant Federal Rules "answer[] the question in dispute" and control in this instance. Furthermore, there is nothing to suggest that these rules run afoul of the Rules Enabling Act or any constitutional provisions that render them invalid. The Court addresses each prong of this analysis in turn.

### A.      Federal Rules Control

As mentioned above, Rule 15 applies when a party seeks to amend a pleading in federal court. Rule 15 does not exist in a vacuum. Rule 15 answers the question of when and what standard governs the amendments of a pleading, and Rules 8 and 9 dictate the requirements of pleading generally and specifically. That is,

> There can be no dispute that our modern rules of civil procedure are based on the concept of "simplified notice pleading," *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f). This can indeed be seen in the basic requirements for a claim for relief as set forth in Rule 8(a), and in the dictate of Rule 15(a), which states that a court shall grant a party leave to amend a complaint "freely . . . when justice so requires." Fed. R. Civ. P. 15(a); *see also Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). This fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure.

*Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 247–48 (6th Cir. 2000) (footnote omitted); *see also* 5 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1203 (3d ed. 2017) (stating there is a "strong nexus between Rule 8 and . . . Rule 9 (pleading special matters), . . . [and] Rule 15 (amended and supplemental pleadings)"); *cf.* Fed. R. Civ. P. 15 advisory committee's note to 1991 amendment (stating that Rule 15's relation back provision was amended because "*Schiavone v. Fortune*[, 477 U.S. 21 (1986)] . . . was inconsistent with the

liberal pleading practices secured by Rule 8"). Because issues surrounding the application of Rule 15 are better understood in the context of Rules 8, 9, and 12, the Court first discusses all four federal rules and then compares them to section 604.18.

### 1.     Rules 8, 9, and 12

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Rule 8's "notice pleading" is designed to "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (omission in original). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). These relaxed pleading standards are designed to be inclusive and reduce the frequency by which litigants are prevented from bringing their claims. *See Twombly*, 550 U.S. at 575. Specifically, Rule 8's "drafters intentionally avoided any reference to 'facts' or 'evidence' or 'conclusions.'" *Id.*

That said, Rule 8's liberal standard is circumscribed in two primary ways. The first is through application of Rule 9, specifying that certain matters must be pleaded differently than what Rule 8 generally requires. *See* Fed. R. Civ. P. 8, 9. An example in which Rule 9 may limit Rule 8's liberal standard is the "particularity" requirement when pleading "circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). This does not mean, however, that Rule 9 fundamentally alters notice pleading. To the contrary, the Court "must interpret the requirements of Rule 9(b) in harmony with the principles of notice pleading." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal quotation marks omitted). For example, with respect to Rule 9(b), "[t]he special nature of fraud does not necessitate anything

other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." [2] *Id.*

The second way in which Rule 8's liberal notice standard is constrained is through the requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Twombly*—which address Rule 8's requirements in the context of a motion to dismiss under Rule 12. *See, e.g.*, *Twombly*, 550 U.S. at 554–58 (discussing Rule 8 in the context of Rule 12(b)(6)). Specifically, these cases stand for the general proposition that Rule 8 "does not require 'detailed factual allegations,'" but claims "must [nevertheless] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). That is, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (citations omitted) (second alteration in original). Furthermore, there are others ways in which a pleading can be challenged under Rule 12.

> For example, the form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested by a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), by a motion for judgment on the pleadings, Rule 12(c), by a motion for a more definite statement, Rule 12(e), or by a motion to strike redundant, immaterial, impertinent, or scandalous matter, Rule 12(f).

---

[2]    Rule 9 also addresses the pleading of special damages, which while not entirely relevant to the specific issue before the Court, is instructive related to whether there is a conflict between the Federal Rules and the Minnesota punitive damages statute as addressed by the recent decisions in *In re Bair Hugger* and *Inline Packaging, LLC*. *See, e.g.*, Baicker-McKee, et al., Federal Civil Rules Handbook 375 (2018) ("Emotional distress damages, **punitive damages**, defamation damages, business destruction and loss of good will, and damages flowing from trade disparagement are often special damages [under Rule 9(g)] . . . ." (emphasis added) (footnotes omitted)).

5 Wright, Miller, & Kane, *supra*, § 1203.[3]

### 2.    Rule 15

In light of Rules 8, 9, and 12, Rule 15 provides its own liberal provision under which federal courts review motions for leave to amend. *See Paul D. Carrington, "Substance" and "Procedure" in the Rules Enabling Act*, 1989 Duke L.J. 281, 310 ("The forgiving spirit of Rule 8 required the liberal amendment provision of Rule 15(a) . . . ."). Specifically, under Rule 15, leave to amend counterclaims "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a); *id.* advisory committee's note to 2009 amendment (stating that Rule 15 is "the sole rule governing amendment of a pleading to add a counterclaim"); *see also Trim Fit LLC v. Dickey*, 607 F.3d 528, 531–32 (8th Cir. 2010) (analyzing a motion to amend to add a counterclaim under Rule 15). Nonetheless, leave to amend a counterclaim should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stated in the context of a Rule 15 amendment to a complaint). As such, Rule 15 espouses the liberal standard that amendments should be allowed, unless certain limited exceptions are present. *See id.*

An example of this liberal standard at work can be seen under the futility analysis. Under this framework, "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended [pleading] could not withstand a

---

[3]    Motions under Rules 12(e) and 12(f), however, are disfavored motions. *See Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) ("Motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted."); *Radisson Hotels Int'l Co. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996) (Kyle, J.) ("Due to this liberal notice-pleading standard and the availability of extensive discovery, Rule 12(e) motions [for a more definite statement] are disfavored.").

motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted). Under 12(b)(6), the pleading "must contain sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (emphasis added). "A claim has facial plausibility" where there is sufficient "factual content [pleaded] that allows the court to draw the reasonable inference that [a party] is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). That is, analysis under Rules 15 and 12(b)(6) generally requires a court not consider matters outside the pleadings to determine whether leave to amend should be given. *See, e.g.*, *Arias*, 2013 WL 12145854, at *2 (stating "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15 (citing *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002))); *cf. Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) ("Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

This liberal standard can also be viewed from the standpoint of the interplay between Rule 8 and Rule 12(b)(6). *See, e.g.*, *Brooks v. Midwest Heart Group*, 655 F.3d 796, 801 (8th Cir. 2011) ("Considered through the appropriate prism of Rule 12(b)(6), there is no doubt that, as to Brooks's claims of race and sex discrimination, the statement in Brooks's complaint . . . was sufficient to meet the liberal pleading standard of Rule 8(a)."). That is, under Rule 15, leave to amend should be freely given, so long as an amendment is pleaded with sufficient specificity "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also* Fed. R. Civ. P. 8, 12, 15. As a corollary to the interplay between Rule 8 and 15, under Rule 9, a claim still must

meet the facial plausibility standard, but that standard differs depending on the claim asserted. *See* Fed. R. Civ. P. 9; *Abels*, 259 F.3d at 920 (stating that Rule 9 does not change the notice pleading paradigm, only that certain claims under Rule 9 require "a higher degree of notice" to demonstrate facial plausibility).

> Rule 15 reflects two of the most important policies of the federal rules. First, the rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on **procedural technicalities**. This is demonstrated by the emphasis Rule 15 places on the **permissive approach** that the district courts are to take to amendment requests, **no matter what their character may be** . . . .
> Second, Rule 15 reflects the fact that the federal rules assign the pleadings the limited role of providing the parties with notice of the nature of the pleader's claim or defense and the transaction, event, or occurrence that has been called into question; they **no longer carry the burden of fact revelation** and issue formulation, which now is discharged by the discovery process. Nor do they control the trial phase of the action. Thus, the strong policy against variances between pleading and proof that existed at common law and to a lesser degree under the codes has been rejected.

6 Wright, Miller, & Kane, *supra*, § 1471 (footnotes omitted) (emphasis added). It cannot be emphasized enough: "Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in." *Twombly*, 550 U.S. at 575. This applies with equal force under Rules 8, 9, 12, and 15. *Cf. id.*

### 3.    Section 604.18

Under section 604.18, however, courts are required to exercise a gate-keeping function[4]—requiring the court consider facts under a hybrid Rule 12(b)(6) and Rule 56 analysis. *See* Minn. Stat. § 604.18, subdiv 2, 4. This gate-keeping function is analogous to situations in which a party seeks to add punitive damages claims under Minnesota Statute section 549.191. *Compare* Minn. Stat. § 549.191 (precluding parties from pleading punitive damages upon

---

[4]    In federal court, *Iqbal* and related cases serve the gate-keeping function, as these cases require more than conclusory statements to be pleaded.

commencement of an action and requiring a prime facie showing via affidavit before allowing an amendment to add a punitive damages claim), *with* Minn. Stat. § 604.18 (precluding parties from pleading bad faith claims upon commencement of action and requiring a prime facie showing via affidavit before allowing an amendment to add a bad faith claim). In particular, section 604.18 requires that a court evaluate evidence in determining whether a motion to amend is granted. *See* Minn. Stat. § 604.18, subdiv. 4(a) ("At the hearing, if the court finds prima facie evidence in support of the motion, the court may grant the moving party permission to amend the pleadings to claim taxable costs under this section.").[5]

The framework under section 604.18 presents a stark contrast to the usual analysis where a federal court need only consider whether the pleading "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). That is, Rules 8, 9, 12, and 15 specify that amendments are permitted so long as they are facially plausible while section 604.18 specifies that amendments— notwithstanding facial plausibility—are prohibited without the requisite evidentiary showing. Stated differently, section 604.18 requires that the court stray outside the pleadings through the review of affidavits "showing the factual basis for the motion" and opposing affidavits "showing there is no factual basis for the motion" to determine if "prima facie evidence . . . support[s] . . . the motion." *See* Minn. Stat. § 604.18, subdiv. 4(a).

In addition to clashing with notice pleading espoused in Rules 8, 9, 12, and 15, section 604.18 also clashes with Rule 9 for another reason. Specifically, Rule 9 provides eight

---

[5]     Under Minnesota law, "a prima facie case simply means one that prevails in the absence of evidence invalidating it." *S. Minn. Beet Sugar Coop. v. County of Renville*, 737 N.W.2d 545, 558 (Minn. 2007) (internal quotation marks omitted). But in the context of section 604.18, this must be done with dueling affidavits—one step beyond simply assuming facts in the moving party's affidavit are true.

enumerated exceptions to the general pleading standard espoused in Rule 8. Section 604.18, however, provides a new exception not specifically enumerated in Rule 9. Importantly, Rule 9's "scope of application should be construed narrowly and not extended to other legal theories or defenses." 5A Wright, Miller, & Kane, *supra*, § 1297. Under this narrow construction, other federal courts have held that bad faith claims related to insurance coverage do not fall within Rule 9's ambit. *See, e.g.*, *Haney v. Am. Family Mut. Ins.*, 223 F. Supp. 3d 921, 926–27 (D.S.D. 2017) (citing cases). The facts in *Haney* are similar to the instant case:

> A June 2014 hailstorm damaged Haney's home, specifically his shake shingle roof. Haney submitted a timely claim to American Family. American Family found that $3,890.15 was a reasonable amount to repair the damage. Two years later, Haney's roofer found that the roof had suffered significant hail damage and that $68,259.61 was needed to properly repair the damage. American Family received the roofer's report and conducted another inspection of Haney's roof. The subsequent inspection revealed that there was hail damage on "all slopes of the roof" and that $3,890.15 was not a reasonable amount to fix the damage. However, American Family disregarded both the roofer's report and the subsequent inspection, and instead found that "[n]othing additional was owed on [the] claim."

*Id.* at 928–29.

> Haney filed a lawsuit in federal court against American Family alleging breach of contract, bad faith, punitive damages, and vexatious refusal to pay. American Family filed a Motion to Dismiss Count II (bad faith) and Count III (punitive damages) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Particularly, American Family argues that Haney's bad faith claim and request for punitive damages fail to satisfy the federal pleading requirements set forth in Rules 9(b) and 8(a)(2) of the Federal Rules of Civil Procedure, and thereby Haney has failed to state a claim upon which relief can be granted.

*Id.* at 923–24. Finding that the plaintiff's bad faith and punitive damages claims satisfied the notice pleading standard under Rule 8, the court denied the defendant's motion to dismiss. *Id.* at 929.

In discussing cases addressing whether Rule 9(b) was applicable, the court in *Haney* agreed with the reasoning that "'bad faith is no more similar to fraud than it is to [m]alice, intent,

14

[and] knowledge, which Rule 9(b) allows litigants to plead generally.'" *Id.* at 927 (quoting *GMP Techs., LLC v. Zicam, LLC*, 2009 WL 5064762, at \*3 (N.D. Ill, 2009)) (alternations in original). This is persuasive in that Rule 9's heightened standard for fraud or mistake is circumscribed by its own requirement that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Critically, "it is now 'emphatically clear' that courts are not permitted to add to [Rule 9(b)'s] list and require, by case-made law, that other claims be pleaded with particularity." Baicker-McKee, et al., *supra*, at 368 (citing *Swierkiewicz*, 534 U.S. at 512–15). In other words, the plain language of Rule 9(b) establishes that fraud or mistake should not be read so broadly as to encompass "other conditions of a person's mind," such as acting in bad faith (or by deliberately disregarding the rights of others under a punitive damages standard). *See* Fed. R. Civ. P. 9(b); *Haney*, F. Supp. 3d at 927; Baicker-McKee, et al., *supra*, at 368; *see also* Minn. Stat. § 549.20 (punitive damages standard); Minn. Stat. § 604.18 (bad faith standard).

For these reasons, section 604.18 requires a greater showing than the standard contemplated by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8, 9, 15; *Iqbal*, 556 U.S. at 678; *Haney*, 223 F. Supp. 3d at 926–29. This Court concludes that considering whether leave to amend should be granted under section 604.18's heightened evidentiary showing conflicts with both the plain meaning and spirit of the Federal Rules.[6] *See* Fed. R. Civ. P. 8, 9,

---

[6]     Justice Scalia in the plurality opinion of *Shady Grove* suggests the same outcome.

> Pleading standards . . . often embody policy preferences about the types of claims that should succeed—as do rules governing summary judgment, pretrial discovery, and the admissibility of certain evidence. Hard cases will abound . . . . Rule 23 unambiguously authorizes **any** plaintiff, in **any** federal civil proceeding, to maintain a class action if the Rule's prerequisites are met. We cannot contort its text, even to avert a collision with state law that might render it invalid.

15; *Iqbal*, 556 U.S. at 678; *Haney*, 223 F. Supp. 3d at 926–27; *see also* 5 Wright, Miller, & Kane, *supra*, § 1203; 6 Wright, Miller, & Kane, *supra*, § 1471. In short, the gate-keeping function of section 604.18 is premised on keeping bad faith claims out of the court, which conflicts with the general purpose of the Federal Rules governing pleadings.[7] *See Twombly*, 550 U.S. at 575 ("Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in.").

Relying in large part on cases that predate *Shady Grove*, the parties argue that: Rule 15 and section 604.18 can "peacefully co-exist"; that because section 604.18 and Minnesota Rule of Civil Procedure 15.01 do not conflict, section 604.18 does not conflict with Rule 15; and section 604.18 must control to avoid forum shopping. *See, e.g.*, (Sela's Suppl. Br. at 2, 4–6); (Selective's Suppl. Br. at 7 n.4, 9, 10–12). The Court finds these arguments unpersuasive. Importantly, whether the state statute and federal rule are capable of co-existing is not the standard under *Shady Grove*. *See* 559 U.S. at 398. Instead, the Court "must first determine whether [the Federal Rule] answers the question in dispute." *Id.* As discussed elsewhere, Rule 15 answers the question of when amendments to pleadings should be permitted. Furthermore, whether Rule 15 is "discretionary," as the parties assert, is largely irrelevant to the issues before the Court. *See* (Sela's Suppl. Br. at 5–6); (Selective Suppl. Br. at 4–9); *see also Shady Grove*, 559 U.S. at 398. For example, federal courts enjoy broad discretion when it comes to issues

---

559 U.S. at 404–05.

[7]     In practice, the court's gate-keeping function acts more like a barricade because amendments adding bad faith (or punitive damages) claims are infrequently allowed under the framework specified by Minnesota law. Specifically, the Court is only aware of two instances in which a motion to amend a pleading to add a claim for bad faith was granted. *See Collins*, 2013 WL 12142580; Order Dated Apr. 22, 2010, *Davis v. Grinnel Mut. Reinsurance Co.*, No. 9-cv-2563 (JMR/FLN) [Doc. No. 19] (Noel, Mag. J.). *But see, e.g.*, *Borchardt*, 2017 WL 8315883 (denying motion to amend); *Nw. Mut. Life Ins.*, 2016 WL 6917204 (same); *Cich*, 2012 WL 12848436 (same); *Brown*, 2013 WL 12308196 (same); *Arias*, 2013 WL 12145854 (same); *Natureview Vista Twinhome Assoc.*, 2010 WL 11537462 (same).

related to discovery under the Federal Rules. *See Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 238 (D. Minn. 2013) (Tunheim, J.) ("The Magistrate Judge has broad discretion to supervise the discovery matters before him." (citing *McGowan v. Gen. Dynamics Corp.*, 794 F.2d 361, 363 (8th Cir. 1986))). It is well settled in this District that Rule 26 of the Federal Rules of Civil Procedure controls and not the Minnesota Government Data Practices Act ("MGDPA")— codified at Minnesota Statutes sections 13.01 *et seq.*[8] Furthermore, and perhaps more importantly, the parties' reliance on a discretionary distinction in the Federal Rules is misplaced; the Court in *Shady Grove* focused on whether Rule 23 was one of general applicability and not whether certain decisions were mandated by its application. *See Shady Grove*, 559 U.S. at 400 ("The fact that Congress has created specific exceptions to Rule 23 hardly proves that the Rule does not apply generally."); *id.* ("And like the rest of the Federal Rules of Civil Procedure, Rule 23 **automatically** applies in all civil actions and proceedings in the United States district courts . . . ." (internal quotation marks omitted)). That is, there is no discretion as to when Rule 15 applies. Fed. R. Civ. P. 15(a); *id.* advisory committee's note to 2009 amendment (stating that Rule 15 is "the sole rule governing amendment of a pleading to add a counterclaim"); *see also Shady Grove*, 559 U.S. at 400.

---

[8]     *See, e.g.*, *Unity Healthcare, Inc. v. County of Hennepin*, No. 14-cv-114 (JNE/JJK), 2015 WL 12977022, at *5 (D. Minn. Sept. 16, 2015) (Keyes, Mag. J.) (stating "judges in this district have concluded in the context of the Minnesota Government Data Practices Act, Federal Rule of Civil Procedure 26(b) governs the scope of discovery in federal court" and citing cases). While not specifically decided on the basis of a conflicts analysis under *Hanna* and its progeny, arguably, however, the same result would be reached under an application of *Shady Grove* to the conflict of the MGDPA with the Federal Rules. *See, e.g.*, *Her v. Paulos*, No. 11-cv-808 (PAM/TNL), 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012) (Leung, Mag. J.) ("It is axiomatic that discovery in federal court is governed not by state rules or statutes, but by the Federal Rules of Civil Procedure." (citing 8 Wright, Miller, & Kane, *supra*, § 2005, which in turn cites *Hanna*, 380 U.S. 460 and *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941))).

The parties also assert that Rule 15 and section 604.18 can "peacefully co-exist" because "Minn. Stat. § 604.18, subd. 4 and Minnesota Rule 15.01 can both apply in the state court for their separate purposes." (Sela's Suppl. Br. at 4) (internal quotation marks omitted); *see also* (Selective's Suppl. Br. at 7 n.4). Notwithstanding the Court's conclusion that co-existence is the incorrect standard, a determination as to whether a Minnesota statute conflicts with a Minnesota rule of procedure is inapposite to the issue of whether a Minnesota statute conflicts with a federal rule of procedure. Simply stated, *Hanna*, *Shady Grove*, and related cases are only applicable to potential conflicts between federal rules and state law. To suggest that this type of analysis can be influenced by whether a state statute conflicts with a state rule of procedure stretches the analysis beyond its intended purpose.

Finally, the parties' concerns about forum shopping are not compelling. In his plurality opinion in *Shady Grove*, Justice Scalia confronted this concern head-on when he concluded

> divergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure. Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court. *Cf. Hanna*, 380 U.S. at 472–473, 85 S. Ct. 1136. The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping. To hold otherwise would be to "disembowel either the Constitution's grant of power over federal procedure" or Congress's exercise of it. *Id.* at 473–474, 85 S. Ct. 1136.

559 U.S. at 416; *see also Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1258 (8th Cir. 1996) ("The [Supreme] Court has stressed that federal courts must apply a Federal Rule to a matter within its scope even where it . . . could lead to a different outcome [in state court]." (citing *Burlington N. R.R.*, 480 U.S. at 6)). The Court is persuaded by this reasoning. Some parties may choose a federal forum over a state forum for the reason that the uniform rules yield more uniform results, regardless of the state in which a diversity action is brought. It would be a fundamental failing

under the Federal Rules of Civil Procedure if the desire for uniformity espoused by the rules could be used to vitiate that same uniformity. *Cf. Hanna*, 380 U.S. at 473–74.

Ultimately, in light of *Shady Grove*, the Court concludes that the Federal Rules of Civil Procedure control in this instance. Specifically,

> Since the Supreme Court's decision in *Hanna v. Plumer*, and its pro-Federal Rule clarification in [*Shady Grove*], it no longer can be doubted that the rules regarding the standard of specificity to be applied to federal pleadings, the pleadings allowed in the federal courts, the form of the pleadings, [and] the special requirements for pleading certain matters . . . all are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.

5 Wright, Miller, & Kane, *supra*, § 1204 (footnotes omitted).

In addition to the above, the Court finds additional support for its position in the context of *In re Bair Hugger*, addressing the conflict between Rule 15 and section 549.191. In *In re Bair Hugger*, the Honorable Franklin L. Noel—for similar reasons as espoused above—departed from this District's traditional analysis under section 549.191 for punitive damages. *See* 2017 WL 5187832, at *4 ("The statutes conflict because the Minnesota procedural rule would not allow for the amendment absent affidavits establishing prima facie evidence of deliberate disregard for the rights and safety of others, where the federal rule has no such procedural requirement."). Judge Noel conducted his analysis in large part because of the *Shady Grove* decision. *Id.* at *1 (conducting his analysis "[i]n light of the United States Supreme Court's decision in [*Shady Grove*], a case not addressed by any of the Minnesota cases applying the Minnesota punitive damages pleading statute in federal court"). Judge Noel concluded that "that Rule 15 and the Minnesota punitive damages statute both address the same subject matter" because section 549.191 imposes procedural requirements that are not present in the Federal Rules. *Id.* at *4.

Another conflict between the Federal Rules of Civil Procedure and Minnesota law lends additional support to this Court's determination. Namely, in *Unity Healthcare, Inc. v. County of Hennepin*, the Honorable Joan N. Ericksen concluded—as a matter of first impression—that Minnesota's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") law codified at Minnesota Statutes section 554.02, subdivision 2(3) was in direct conflict with Rules 12 and 56 of the Federal Rules of Civil Procedure.[9] *See* 308 F.R.D. 537, 540–43 (D. Minn. 2015) (Ericksen, J., adopting report and recommendation of Keyes, Mag. J.). "Minnesota's anti-SLAPP law immunizes from liability '[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action' unless the speech 'constitutes a tort or a violation of a person's constitutional rights.'" *Id.* at 540 (quoting Minn. Stat. § 554.03). From a procedural standpoint,

> [a]fter a motion is filed seeking immunity under the anti-SLAPP law, the court must determine whether the party seeking dismissal has made a threshold showing that the underlying "claim materially relates to an act of the moving party that involves public participation." Minn. Stat. § 554.02, subd. 1. If the moving party has made its threshold showing, the second step is to determine whether "the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability." Minn. Stat. § 554.02, subd. 2(3).

*Id.* Ultimately, Judge Ericksen concluded "[t]he restrictive standard for discovery under the anti-SLAPP law is oil to the water of Rule 56's more permissive standard." *Id.* at 541.

---

[9]  Like with other Minnesota statutes described elsewhere, courts in this District have applied Minnesota's anti-SLAPP law, but "none of the cases . . . considered the potential conflict between the motion to dismiss procedure in Section 554.02, subd. 2, and the Federal Rules of Civil Procedure." *Unity Healtcare*, 308 F.R.D at 547 (Keyes, Mag. J.) (citing cases including *Moldex Metric, Inc. v. 3M Co.*, No. 14-cv-1821 (JNE/FLN), 2015 WL 520722 (D. Minn. Feb. 9, 2015) (Ericksen, J.), which was an earlier decision by Judge Ericksen applying Minnesota's anti-SLAPP law, but was not premised on a conflicts analysis of the Federal Rules of Civil Procedure and Minnesota's anti-SLAPP law under *Shady Grove*).

Judge Ericksen's reasoning in *Unity Healthcare* is instructive in the instant case. For example, Judge Ericksen concluded that "[t]he fact that the anti-SLAPP law serves a different, narrower function than Rule 56 does not save it from colliding with Rule 56 when both purport to instruct the Court how to handle [the same] pre-trial issues . . . ." *Id.* at 542. This is true here as well; section 604.18 may be narrow in that it is applicable to the limited extent of adding bad faith claims and not all claims under the Federal Rules, but section 604.18 nevertheless "purport[s] to instruct the Court how to handle [the same] pre-trial issue[]." *Id.* Furthermore, Judge Ericksen stated, "[w]hen states enact exceptions that directly collide with valid Federal Rules, federal courts cannot apply those exceptions." *Id.* Likewise here, the exception to the federal standard for amending claims contemplated in section 604.18 conflicts with the more liberal standard present in the Federal Rules.[10] Borrowing Judge Ericksen's language in *Unity Healthcare*, "[t]he restrictive standard for [adding amendments related to claims of bad faith] under [Minnesota Statutes section 604.18] is oil to the water of [Rules 8, 9, 12, and 15's] more permissive standard[s]." *Cf. id.* at 541.

The reasoning of federal courts in other Districts that have addressed other jurisdictions' anti-SLAPP laws is also persuasive in addressing the issues before the Court.

> This Court respectfully does not see how Rules 12 and 56 fail to answer the same question as the Anti–SLAPP Act because, as even the First Circuit acknowledged, Rules 12(b)(6) and 56 are general federal procedures governing all categories of cases . . . . [T]hose rules govern all categories of cases and provide the exclusive means by which a motion may challenge the sufficiency of a claim. This is the **precise** reason why Rules 12 and 56 answer the question in dispute.

*3M Co. v. Boulter*, 842 F. Supp. 2d 85, 107 (D.D.C. Feb. 2, 2012) (quotation marks omitted) (addressing a contrary holding in *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010)).

---

[10]  For this purpose, the Court assumes that Rules 8, 9, 12, and 15 are valid. *See Burlington N. R.R.*, 480 U.S. at 6 (stating that a Federal Rule is presumptively valid). The Court addresses whether these rules are valid in more detail below.

As did the court in *Boulter*, this Court finds that Rule 15 is a "general federal procedure[]" and specifies the "means by which" amendments are to be made in all civil cases. *See id.* Consequently, Rule 15 "answers the question in dispute" regarding Sela's Motion to Amend. *See Shady Grove*, 559 U.S. at 398; *cf. Unity Healthcare, Inc.*, 308 F.R.D. at 542 ("When states enact exceptions that directly collide with valid Federal Rules, federal courts cannot apply those exceptions."); *Boulter*, 842 F. Supp. 2d at 107.

In addition, if this Court were to find section 604.18 controlling for the purposes of establishing how a court in this District must permit amendments to be added for bad faith claims—taken to its logical extreme—Minnesota through piecemeal legislation could create a procedural framework whereby the Federal Rules' liberal standards are the exception, not the rule in diversity cases. For example, as described above, Minnesota has already enacted exceptions to the Federal Rules under sections 549.191 and 604.18. Minnesota arguably could also pass additional statutes for adding other types of claims or forms of relief and specify the same prima facie standard that is more onerous than the standard contemplated by the Federal Rules. Done with sufficient frequency, this result would mean Minnesota's prima facie evidentiary standard would replace the Federal Rules' liberal standard in diversity cases. As mentioned above, the Federal Rules were specifically amended to move away from this type of evidentiary showing at the pleading stage. *See* 6 Wright, Miller, & Kane, *supra*, § 1471 (stating that the pleadings "no longer carry the burden of fact revelation and issue formulation, which now is discharged by the discovery process."). Furthermore, this result would undermine the uniform purpose of the Federal Rules. *See Burlington N. R.R.*, 480 U.S. at 5 n.3 ("In the Rules Enabling Act, Congress authorized this Court to prescribe uniform Rules to govern the practice

and procedure of the federal district courts and courts of appeals." (internal quotation marks omitted)).

At bottom, "if a matter is covered by a Federal Rule the federal courts must apply the Rule without regard to whether the matter might arguably be labeled as substantive or procedural." *In re Baycol Prods. Litig.*, 616 F.3d 778, 786 (8th Cir. 2010) (internal quotation marks omitted). "[T]he full-blown *Erie* analysis—first determining whether a matter is substantive or procedural and then applying state law on substantive matters—does not apply if the matter in question is covered by a Federal Rule of Civil Procedure." *Hiatt*, 75 F.3d at 1258. Because this Court concludes that section 604.18 is covered by—and conflicts with—Rules 8, 9, 12, and 15 of the Federal Rules of Civil Procedure, the only remaining question is whether these rules are valid under the Rules Enabling Act. *See Shady Grove*, 559 U.S. at 398 (majority opinion); *Burlington N. R.R.*, 480 U.S. at 5; *Hanna*, 380 U.S. at 463–64; *Sibbach*, 312 U.S. at 10–11.

### B.      Rules 8, 9, 12, and 15 are Valid

*Shady Grove* provides no clear answer regarding the proper test to determine whether a federal rule is valid. *Compare Shady Grove*, 559 U.S. at 406–10 (plurality opinion related to the proper test regarding whether a federal rule is valid under the Rules Enabling Act), *with id.* at 419–28 (Stevens, J., concurring in part and concurring in the judgment) (offering a different test regarding the same). Because this aspect of the *Shady Grove* opinion is less instructive than that majority opinion related to whether a federal rule conflicts with state law, this Court analyzes whether Rules 8, 9, 12, and 15 are valid under the Rules Enabling Act under more clearly established caselaw.

First, the Court must start with the presumption that the Federal Rules are valid. Specifically,

> the study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and this Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect, *see* 28 U.S.C. § 2072, give the Rules presumptive validity under both the constitutional and statutory constraints.

*See Burlington N. R.R.*, 480 U.S. at 6. Under a presumption of validity, the Court must then consider whether Rules 8, 9, 12, or 15 "abridge, enlarge or modify any substantive [state] right." *See* 28 U.S.C. § 2072. If a rule does "abridge, enlarge or modify any substantive right," it is not valid under the Rules Enabling Act. *See Burlington N. R.R.*, 480 U.S. at 5; *Hanna*, 380 U.S. at 464; *Sibbach*, 312 U.S. at 10–11.

At the outset, the Court notes the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before" it. *See Shady Grove*, 559 U.S. at 407–08 (plurality opinion) (citing and discussing cases). This is so because the Rules Enabling Act prohibits a rule from "abridge[ing], enlarge[ing] or modif[ing] [a] substantive right," but the Supreme Court has read that language narrowly. Specifically, if the federal rule "governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* at 407 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 446 (1946) (alterations in original)).

Stated differently, "[t]he test must be whether a rule really regulates procedure" which is "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach*, 312 U.S. at 14. Demonstrating that the rights of litigants are affected is not enough. "Undoubtedly most alterations of the rules of practice and procedure may and often do affect the rights of litigants."

*Miss. Publ'g Corp*, 326 U.S. at 445; *see also Shady Grove*, 559 U.S. at 407–08 (plurality opinion) ("[Rules 4(d)(1), 4(f), 11, 35] had some practical effect on the parties' rights, but each undeniably regulated only the process for enforcing those rights; none altered the rights themselves, the available remedies, or the rules of decision by which the court adjudicated either."). In other words,

> it also seems clear that a slight or incidental intrusion on substantive rights will not necessarily trigger the Enabling Act's [substantive right] proviso and render a Civil Rule inapplicable or invalid.
>
> Rules of law are inextricably interrelated, and virtually any rule of procedure, when enforced, will directly or indirectly affect numerous "rights" of the litigants, some of which may be considered "substantive." If incidental impingements on substantive rights were sufficient to render a Civil Rule inoperative, the very objective of the Enabling Act and the Rules themselves would be imperiled.

*See* 19 Wright, Miller, & Kane, *supra*, § 4509.

Therefore, "[t]he question is . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Hanna*, 380 U.S. at 466 (internal quotation marks omitted) (omission in original). In the instant case, that question is answered in the negative.

*Hanna* is instructive on this point.

> The difference between the conclusion that the Massachusetts rule is applicable, and the conclusion that it is not, is of course at this point "outcome-determinative" in the sense that if we hold the state rule to apply, respondent prevails, whereas if we hold that Rule 4(d)(1) governs, the litigation will continue. But in this sense every procedural variation is "outcome-determinative."

*Hanna*, 380 U.S. at 469. Notwithstanding the fact the decision before the Supreme Court was "outcome-determinative" it held "Rule 4(d)(1) is valid and controls the instant case." *Id.* at 474. Here, the rules in question cannot be considered "outcome determinative"; the issue before the Court is not dispositive of whether the litigation will continue. This undermines a determination

that the rules are invalid. *Cf. Hanna*, 380 at 469, 474. Assuming that Sela is allowed to amend his pleading to add counterclaims for bad faith, that does not mean he will prevail on the merits of those claims or otherwise prevail generally in this lawsuit. Specifically, if the amendment is allowed, he will have the burden to establish facts sufficient to show that Selective's denial of benefits was an unreasonable one, as specified substantively under section 604.18. Simply stated, under Rules 8, 9, 12, and 15, whether a party is permitted to add a claim for bad faith is divorced from a merits-based analysis of whether that party can prevail on that claim under controlling substantive law.[11] To that end, the fact that Rules 8, 9, 12, and 15 collide with section 604.18 because these rules do not require an evidentiary analysis is precisely why they are valid; these rules do not impact the substance of Minnesota law (or any law) because they are crafted to avoid such entanglements. *See* 5 Wright, Miller, & Kane, *supra*, § 1204; 5A *id.* § 1297; 6 *id.* § 1471; *cf. Hanna*, 380 U.S. at 469, 474.

Ultimately, "[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Hanna*, 380 U.S. at 473. Because Rules 8, 9, 12, and 15 of the Federal Rules of Civil Procedure are controlling and valid, the Court will analyze Sela's Motion to Amend under the Federal Rules and not under section 604.18.

### C.     Legal Standard

---

[11]     There is guidance related to claims for punitive damages under section 549.19 in the Minnesota Practice Series Jury Instruction Guides. *See* 4A Minn. Prac., Jury Instr. Guides CIVJIG 94.10 (2017) (punitive damages). There does not appear to be a related jury instruction for bad faith claims under section 604.18. It goes without saying, however, that nothing in this Court's decision about whether amendments can be made pursuant to Rule 15 in any way alters the substantive issues under Minnesota law. For example, regardless of whether an amendment is allowed under Rule 15, the burden of proof necessary under section 604.18 remains unchanged.

Under Rule 15(a), a court should "freely give leave" to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a). Nonetheless, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman*, 371 U.S. at 182.

It is not an abuse of discretion to deny amendments that are futile. *See, e.g.*, *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (Erickson, Mag. J.); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (Doty, J.). That is, "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz*, 601 F.3d at 850 (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

### D.    Analysis

Under the applicable Rule 15 analysis, there is nothing to suggest that Sela's proposed amendments involve "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman*, 371 U.S. at 182. Specifically, as it relates to futility, the Court concludes that Sela's amendments are plausible on their face under the substantive law of section 604.18 against which Sela's

amendments must be considered. *See Hanna*, 380 U.S. at 465 (stating "federal courts sitting in

diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions

as well as state statutes").

Section 604.18 requires that a moving party demonstrate:

> (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and
> (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

Minn. Stat. § 604.18, subdiv. 2. Under the first prong, Sela has pleaded with sufficient specificity

that Selective did not have "a reasonable basis for denying the benefits of the insurance policy."

*Id.*

> Under this prong, courts consider whether the claim was properly investigated and whether the results of the investigation were subjected to reasonable evaluation and review. Whether an insurer has acted reasonably in good or bad faith is measured against what another reasonable insurer would have done in a similar situation.

*Friedberg v. Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1026 (D. Minn. 2011) (Keyes, Mag. J.).

Here, this prong is met because Sela has pleaded sufficient facts—if true—that plausibly

demonstrate Selective acted unreasonably. Importantly, the Policy "contains an Appraisal

provision stating: If you and we fail to agree on the amount of loss, either may demand an

appraisal of the loss." (Am. Answer & Counterclaim ¶ 65) (internal quotation marks omitted).

"In this event, each party will choose a competent and impartial appraiser within 20 days after

receiving a written request from the other." (*Id.*) (internal quotation marks omitted). If the

appraisals differ, they are submitted to an umpire—agreed upon by the appraisers—who will

adjudicate the dispute. *See* (*id.*). "On December 2, 2016, Selective denied coverage and refused

to pay any amount . . . under the Policy . . . ." (*Id.* ¶ 63). "[O]n December 12, 2016, Mr. Sela

made a written demand for appraisal for the loss. Selective refused to participate in such appraisal." (*Id.* ¶ 66). Furthermore, "[d]espite numerous requests from Mr. Sela, Selective has refused to honor its obligations under the Policy." (*Id.* ¶ 67).

That is, the Court finds that Sela's allegations plausibly state Selective's failure to abide by its contractual obligations that dictate how the parties must proceed when the amount of loss is contested was objectively unreasonable—particularly, as here, where the central issue relates to the veracity of Sela's damages under the Policy. *See generally* (Second Am. Compl.) (asserting fraudulent activity by Sela in the manner in which he misrepresented the damage to his roof); *cf.* Order Dated Apr. 22, 2010, *Davis v. Grinnel Mut. Reinsurance Co.*, No. 9-cv-2563 (JMR/FLN). In *Davis,* Judge Noel concluded "the $187,961.29 discrepancy between the Defendant's offer of benefits and the estimate provided by Plaintiff's public adjuster . . . support[s] . . . the Plaintiff's argument that Defendant lacked a reasonable basis for denying full benefits under the policy." *Id.* at 4. Here, assuming Sela's assertions are true, Selective never presented Sela with an appraisal as to the loss. (Am. Answer & Counterclaim ¶ 66). In other words, if it is objectively unreasonable to deny insurance benefits in the face of a large discrepancy between an insurance company's appraisal and a third-party adjuster's appraisal—as *Davis* suggests—it is also arguably unreasonable to maintain a denial of benefits while simultaneously failing to provide Sela with an appraisal of loss as he requested under the Policy. Stated differently, Sela's allegations plausibly suggest that Selective's denial of coverage was objectively unreasonable because Selective prevented Sela from challenging Selective's denial of coverage determination under the appraisal provision in the Policy by not providing an appraisal of loss as requested and required under the Policy.

Sela has also sufficiently pleaded that Selective "knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy" under the second prong. *See* Minn. Stat. § 604.18, subdiv. 2. Under this prong, "[k]nowledge of the lack of a reasonable basis may be inferred and imputed to an insurer where there is reckless indifference to facts or proofs submitted by the insured." *Friedberg*, 800 F. Supp. 2d at 1026. Here, knowledge of the lack of a reasonable basis can be inferred for largely the same reason as the first prong. Namely Selective knew or should have known under the language of the Policy that it was required to provide an appraisal as requested by Sela and that any differences would need to be adjudicated by an umpire agreed upon by the parties' appraisers. *See* (Am. Answer & Counterclaim ¶ 65). "Despite numerous requests from Mr. Sela, Selective has refused to honor its obligations under the Policy." (*Id.* ¶ 67). In other words—assuming Sela's allegations to be true—Sela put Selective on notice that Selective was not abiding by the appraisal provision of the insurance policy, and Selective maintained its denial of Sela's insurance claim notwithstanding its failure to comport with that contractual provision. *See* (*id.* ¶¶ 62–67). Selective wants the Court to ignore this and proceed directly to its fraud-based denial—something that would logically follow an appraisal process and proof of loss. In other words, Selective is asking the Court to stand in its shoes and conduct the appraisal that it was unwilling to do under the plain language of its contractual obligations.

Ultimately, the Court is satisfied that Sela has established that he is entitled to amend his Answer and Counterclaims under the liberal standards espoused in the Federal Rules. As a result, Sela's Motion to Amend is granted.[12]

## III.   CONCLUSION

Based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Amit Sela's Motion for Leave to Amend Counterclaims and Add Claim for Bad Faith Under Minn. Stat. § 604.18 [Doc. No. 88] is **GRANTED**.


Dated: April 26, 2018


*s/Steven E. Rau*_____
STEVEN E. RAU
United States Magistrate Judge

---

[12]     Notwithstanding the above analysis, this Court takes no position as to whether Sela will prevail on this added claim. Under the Federal Rules, granting an amendment is not premised on any finding that the movant shall prevail on the added claim. *See generally* Fed. R. Civ. P. 8, 9, 12, 15; *see also Iqbal*, 556 U.S. at 678. Importantly, there may be facts that demonstrate a reasonable basis for the denial of coverage under Minnesota law. But under Rule 15, the Court may not consider matters outside the pleadings in making its determination on Sela's Motion to Amend. *See Arias*, 2013 WL 12145854, at *2 (stating "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15).