UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA,

      Plaintiff/Counter-defendant,

v.

AMIT SELA,

      Defendant/Counter-claimant.

Case No. 16-CV-4077 (PJS/SER)

ORDER

Kristi K. Brownson, Aaron M. Simon, Lindsey A. Streicher, and Olivia M.
Cooper, BROWNSON NORBY, PLLC, for plaintiff/counter-defendant.

Christopher H. Yetka, Christopher L. Lynch, and Patricia E. Volpe, BARNES &
THORNBURG, LLP, for defendant/counter-claimant.

Defendant/counter-claimant Amit Sela was insured under a homeowner's policy

issued by plaintiff/counter-defendant Selective Insurance Company of South Carolina

("Selective"). In June 2015, Sela's property was damaged by a hailstorm, and Sela

sought to be indemnified by Selective. After an investigation, Selective denied Sela's

claim on grounds of fraud. Specifically, Selective found that Sela had lied when he

claimed that certain property had been damaged only by the June 2015 hailstorm when,

in fact, that property had also been damaged by an earlier hailstorm—a hailstorm that

had occurred before Sela was insured by Selective. After Sela contested Selective's

findings, Selective brought this action, seeking a declaration that it is not liable to Sela. Sela filed an answer and a counterclaim, seeking indemnification for his losses.

Sela has now moved for leave to amend his counterclaim to add a claim under Minn. Stat. § 604.18 ("§ 604.18") for bad-faith denial of insurance benefits. That statute forbids the insured from making a bad-faith claim in his initial pleading, but instead requires the insured to later move for leave to amend his pleading to add a bad-faith claim. The insured's motion must be accompanied by one or more affidavits establishing the factual basis for the bad-faith claim, and the insurer may submit affidavits in opposition to the motion. A court may not grant the motion unless the court finds, on the basis of the affidavits, that the insured has established a prima facie case of bad faith. *See* § 604.18, subd. 4(a).

Sela's motion for leave to amend raises two difficult questions: First, in deciding whether Sela should be given leave to amend his counterclaim to add a bad-faith claim, should this Court apply § 604.18, or should this Court instead apply the Federal Rules of Civil Procedure (which do not impose the pleading barriers found in § 604.18)? And second, should Sela's motion for leave to amend be granted?

In an April 26, 2018 order, Magistrate Judge Steven E. Rau found that the procedural requirements of § 604.18 do not govern in federal court—and, applying the far less demanding requirements of the Federal Rules, Judge Rau found that Sela's

motion for leave to amend should be granted. Selective now objects to both of Judge

Rau's conclusions. Specifically, Selective argues that Judge Rau should have applied

§ 604.18—and that, under either § 604.18 or the Federal Rules, Sela should not have

been given leave to amend.

The standard by which this Court should review Judge Rau's order is unclear.

A motion for leave to amend a pleading is a nondispositive motion, and typically, a

magistrate judge's ruling on a nondispositive motion will be reversed only if it is

"clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

But district judges in this District have held that, when a magistrate judge denies leave

to amend a pleading because the proposed amendment would be futile, the magistrate

judge's ruling is reviewed de novo. *See, e.g.*, *Magee v. Trs. of Hamline Univ.*, 957 F. Supp.

2d 1047, 1062 (D. Minn. 2013). The basis for this exception is not entirely clear,

however, and thus it is difficult to know whether this exception is also meant to apply

to a decision of a magistrate judge to *grant* leave to amend because the proposed

amendment would *not* be futile. The Court will err on the side of caution and conduct a

de novo review.[1]

---

[1]There should be no question that a district judge may choose to review a
magistrate judge's order de novo, even if the district judge does not have to. After all,
the district judge does not have to refer the motion to the magistrate judge in the first
place, and the district judge always retains authority to revoke the referral. Moreover,
an order that grants or denies leave to amend a pleading is interlocutory, and "[t]he
(continued...)

Based on that de novo review, the Court overrules Selective's objection and grants Sela leave to amend his counterclaim. The Court agrees with Judge Rau that the pleading requirements imposed by § 604.18 do not apply in federal court. The Court does not agree with the reasons given by Judge Rau for permitting Sela to amend his counterclaim under the Federal Rules. But given the unusual posture of this case, the Court will nevertheless permit Sela to bring his bad-faith claim, and the Court will address any problems with that claim on motion for summary judgment.

## I. BACKGROUND

Sela owns a large house and other property in Minnetonka, Minnesota. Am. Ans. ¶¶ 3, 8.[2] Sela's property was damaged by a hailstorm in June 2010. Am. Ans. ¶ 12(a); ECF No. 92-4 at 49. At the time, Sela's property was insured by Lexington Insurance Company ("Lexington"). ECF 92-4 at 49-50. Sela filed a claim with Lexington, and Lexington indemnified Sela and his then-wife in the amount of $510,797.23. *See* ECF No. 26-4 at 18-19. Sela used part of the money to repair or replace

---

[1](...continued)
district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995).

[2]Sela submitted a proposed amended answer and counterclaim with his motion for leave to amend. The Court will refer to this proposed amended answer and counterclaim throughout this order. ECF No. 68-1.

some—but not all—of the damaged property.  Am. Ans. ¶ 12.  Sela apparently pocketed

the remaining part of the money.

Sela later switched insurance providers, and from July 2014 to July 2015, Sela was

insured under a homeowner's policy issued by Selective.  Am. Ans. ¶ 51; ECF No. 17-1

at 2-3.  That policy covered the house, garage, and other structures, as well as personal

property.  Am. Ans. ¶ 52; ECF No. 17-1 at 3, 11-14.  The policy also contained two

provisions that are particularly relevant to Sela's motion for leave to amend his

counterclaim:

First, the Selective policy contained an Anti-Fraud Provision, which essentially

eliminates coverage when any insured has engaged in any act of fraud.  Specifically, the

Anti-Fraud Provision provides as follows:

> We provide coverage to no "insureds" under this policy if,
> whether before or after a loss, an "insured" has:
>
> 1.      Intentionally concealed or misrepresented any
>         material fact or circumstance;
>
> 2.      Engaged in fraudulent conduct; or
>
> 3.      Made false statements;
>
> relating to this insurance.

ECF No. 17-1 at 26.

Second, the Selective policy contains an Appraisal Provision that applies when the parties agree that a loss is covered, but disagree about the amount that Selective must pay in connection with the loss. ECF No. 17-1 at 24. The Appraisal Provision provides as follows:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire . . . . The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

ECF No. 17-1 at 24.

On June 29, 2015, Minnetonka was hit with another hailstorm, and once again Sela's property was damaged. Am. Ans. ¶ 53; ECF No. 73-5 at 3. Sela submitted a claim to Selective on July 8, 2015. Am. Ans. ¶ 55; ECF No. 73-5 at 3. In response, Selective promptly sent an independent claims adjuster to inspect the damage. ECF No. 73-5 at 3, 6-7. The adjuster spoke with Sela, took dozens of photos, and wrote a report, which he submitted to Selective's staff adjuster, Dave Clark. ECF No. 73-5 at 6-7, 8-79.

Several days later, Selective received an anonymous letter that accused Sela of submitting a fraudulent insurance claim. The letter also accused Sela of submitting fraudulent insurance claims in the past, and the letter provided information about the

claim that Sela had submitted to Lexington following the 2010 hailstorm. ECF No. 26-6 at 3. After receiving the letter, Selective referred the matter to its Special Investigative Unit ("SIU"), which began an investigation. *See* ECF No. 92-2 at 9; ECF No. 92-4 at 2. Charlene Pack (one of Selective's fraud investigators) and Clark (the staff adjuster) spoke about Sela's claim and determined they needed more information from Sela and Lexington before they could make a decision about coverage. *See* ECF No. 92-4 at 16. Clark then personally inspected Sela's property on August 5, 2015. ECF No. 92-4 at 19.

Over the next several months, the SIU continued its fraud investigation and continued gathering information from and about Sela. ECF No. 92-4 at 21-25. In December 2015, Sela submitted a sworn proof of loss and supporting documentation. ECF No. 92-4 at 30. Sela claimed that he had suffered nearly $750,000 in losses as a result of the hailstorm. ECF No. 16-3 at 5. Selective reviewed the proof of loss and noted that some of the supporting documentation was "very questionable" and that the paperwork was missing "vital information" needed to resolve the claim. ECF No. 92-4 at 34. In January 2016, Pack and Clark agreed to request an examination of Sela under oath because of uncertainty surrounding Sela's prior hail-damage claim, the SIU's inability to verify what Lexington had paid to Sela, and the lack of confirmation about what Sela repaired or replaced after the 2010 storm. ECF No. 92-4 at 35-36. Selective

continued to request (and receive) more information regarding Sela's claim. ECF No. 92-4 at 35-44.

On February 4, 2016, Selective notified Sela that it would not accept his proof of loss because Sela had not provided all of the requested documentation. ECF No. 26-2 at 2. Sela disputed that his proof of loss was inadequate. ECF No. 26-2 at 2. While the parties argued about the adequacy of Sela's documentation, Selective took further steps to investigate Sela's claim. In April 2016, Selective examined Sela under oath. ECF No. 92-4 at 58. Selective also retained an independent expert (Collins Ofori-Amanf) to inspect Sela's home and aid in the fraud investigation. *See* ECF No. 74-1 at 312-30. Ofori-Amanf inspected Sela's home, conducted an investigation, and described his conclusions in an expert report (the "Collins Report"). ECF No. 74-1 at 312-30. After reviewing the Collins Report, one of Selective's attorneys (Kristi Brownson) informed Selective's SIU that she believed that "fraud [was] applicable" and that Selective was at a "point to determine if [it] want[s] to deny the whole thing, or pay the minor portion." ECF 92-4 at 61. Selective continued to collect information, confer with counsel, and evaluate the Collins Report in light of evidence submitted by Sela. *See* ECF No. 92-4 at 61-64.

On December 2, 2016, Selective filed this lawsuit seeking a declaration that, under the Anti-Fraud provision of its policy, it had no obligation to indemnify Sela for

any losses because he had concealed or misrepresented material facts.  *See generally*
Second Am. Compl.  In response to Selective's lawsuit, Sela submitted a written
demand for an appraisal of the loss—a demand that Selective rejected.  Am. Ans.
¶¶ 66-67.  Sela also filed an answer and counterclaim, and later moved for leave to
amend his counterclaim to add a claim for bad-faith denial of insurance benefits.  ECF
No. 88 (renewed motion to amend).  The Court now turns to that motion.

## II.  DISCUSSION

### A.  Legal Standard

The initial question is whether Sela's motion for leave to amend his counterclaim
is governed by state law (specifically, § 604.18) or federal law (specifically, Rules 8 and
15 of the Federal Rules of Civil Procedure).  Judge Rau held that federal law applies.
ECF No. 111 at 26-27.  Selective disagrees.  ECF No. 118 at 1, 6-9.  Having carefully
reviewed the question, the Court agrees with Judge Rau that the Federal Rules of Civil
Procedure—and not § 604.18—govern Sela's motion to amend.

As first-year law students are taught—if their Civil Procedure professor is brave
enough to cover *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)—"federal courts sitting
in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr.
for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Pleading standards are generally viewed as
procedural, and thus federal courts generally apply federal pleading rules regardless of

whether a claim arises under federal or state law. *See, e.g., Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law."); *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 730 (8th Cir. 2011) (applying "federal pleadings standards" and "Missouri substantive law" to review a motion to dismiss a state tort claim); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts 'are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.'" (citation omitted)).

Notwithstanding the general rule, this District has long applied *state* pleading standards to claims for punitive damages under Minnesota law. *See, e.g., In re Levaquin Prods. Liab. Litig.*, No. 08-CV-5743 (JRT), 2010 WL 4867588, at *2-3 (D. Minn. Nov. 23, 2010) (noting that this District has applied Minn. Stat. § 549.191 to claims for punitive damages); *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-CV-2666 (JNE/FLN), 2017 WL 5187832, at *1 n.1 (D. Minn. July 27, 2017) ("The Judges and Magistrate Judges of this Court have consistently applied the Minnesota punitive damage statute in diversity cases where state law supplies the rule of decision."). This District has also consistently applied *state* pleading standards to claims of bad-faith denial of insurance benefits under Minnesota law. *See, e.g., Friedberg v.*

*Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1024-25 (D. Minn. 2011) (applying § 604.18, subd. 4(a)); *Martin v. State Farm Fire & Cas. Co.*, 826 F. Supp. 2d 1133 (D. Minn. 2011) (same).

In the past, the undersigned has acted consistently with the District's practice with respect to claims for punitive damages. *See, e.g., Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1165 (D. Minn. 2011) (applying Minn. Stat. § 549.191). (Until today, the undersigned has not had to decide whether to act consistently with the District's practice with respect to bad-faith claims.) But two things about the District's practice have nevertheless been troubling. First, as noted, the District's practice with respect to both punitive-damages and bad-faith claims seems inconsistent with the general rule that federal pleading rules apply in federal court, even to claims that arise under state law. And second, the District's practice—which, in the case of punitive-damages claims, dates back more than 30 years—seems to have developed without a great deal of analysis.[3] The Court has thus decided to look at the issue anew, particularly in light of

_____

[3]The first district judge to consider whether Minn. Stat. § 549.191 should be applied in diversity cases (Judge Donald D. Alsop) concluded that it should *not*, but provided only two sentences of analysis. *Jacobs v. Pickands Mather & Co.*, No. 5-87-CIV 49, 1987 WL 47387, at *1 (D. Minn. Aug. 24, 1987). The next district judge to consider the issue (Judge Edward J. Devitt) concluded that § 549.191 *should* apply in diversity cases, but provided only one paragraph of analysis and did not cite *Jacobs*. *Fournier v. Marigold Foods, Inc.*, 678 F. Supp. 1420, 1422 (D. Minn. 1988). Other district judges followed Judge Devitt's lead—typically with little or no independent analysis—and in 1990, Judge Alsop changed his view "[i]n the interest of consistency within the district"
(continued...)

the Supreme Court's relatively recent decision in *Shady Grove Orthopedic Associates., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).

*Shady Grove* instructs that "[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (quoting *Shady Grove*, 559 U.S. at 398-99). Courts need not "wade into *Erie*'s murky waters" when the Federal Rule satisfies both requirements. *Shady Grove*, 559 U.S. at 398. The question in this case, then, is whether the Federal Rules conflict with § 604.18 by "answering the same question" in a different way—and, if so, whether application of the Federal Rules would violate the Rules Enabling Act.

### 1. State and Federal Pleading Standards

Subdivision 2 of § 604.18 authorizes an insured to recover certain "taxable costs" from an insurer who in bad faith denies benefits under an insurance policy.

---

[3](...continued)
and because he was "persuaded by the reasoning" of the other opinions. *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1353 (D. Minn. 1990).

The first decision of a judge of this district to apply § 604.18 in a diversity case simply cited *Fournier* and concluded that, for the same reasons that § 549.191 applies in diversity cases, § 604.18 also applies. *Natureview Vista Twinhome Ass'n v. Phoenix Ins. Co.*, No. 09-CV-1893 (RHK/JJK), 2010 WL 11537462, at *3 n.2. (D. Minn. Mar. 30, 2010).

Subdivision 4(a) of § 604.18 sets forth the procedural steps that an insured must follow

in pursuing a recovery under subdivision 2:

> Upon commencement of a civil action by an insured against
> an insurer, the complaint must not seek a recovery under
> this section. After filing the suit, a party may make a motion
> to amend the pleadings to claim recovery of taxable costs
> under this section. The motion must allege the applicable
> legal basis under this section for awarding taxable costs
> under this section, and must be accompanied by one or more
> affidavits showing the factual basis for the motion. The
> motion may be opposed by the submission of one or more
> affidavits showing there is no factual basis for the motion.
> At the hearing, if the court finds prima facie evidence in
> support of the motion, the court may grant the moving party
> permission to amend the pleadings to claim taxable costs
> under this section.

The Federal Rules of Civil Procedure also regulate the content of a complaint

filed in a civil action and the amendment of such a complaint. Specifically, Rule 8

establishes general rules of pleading, while Rule 15 establishes rules regarding the

amendment of pleadings.

## 2. Section 604.18 conflicts with the Federal Rules

The first step of the *Shady Grove* analysis requires the Court to decide if § 604.18,

subd. 4(a) conflicts with Rules 8 and 15. A state rule conflicts with a Federal Rule when

the two rules provide different "answers [to] the question in dispute." *Shady Grove*, 559

U.S. at 398. A state rule can conflict with a federal pleading rule when the state rule

regulates the manner in which a plaintiff pleads the elements of a state-law claim. *Vang v. PNC Mortg., Inc.*, 517 F. App'x 523, 527 (8th Cir. 2013).

### a. Section 604.18 conflicts with Rule 8

Subdivision 4(a) of § 604.18 bars a complaint from including a claim for bad-faith denial of insurance benefits. The bar is without exception: "Upon commencement of a civil action by an insured against an insurer, the complaint must not seek a recovery under this section."

By contrast, Rule 8 does not bar bad-faith claims or any other type of claim from being pleaded in a complaint. To the contrary, Rule 8(a) provides that a complaint "must contain" both "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)&(3). Rule 8 therefore authorizes a plaintiff to "request any and all of the relief sought . . . in all pleadings that state a claim (including initial complaints)." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999), *vacated in part on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (en banc).

Clearly, then, subdivision 4(a) and Rule 8 answer the same question—may a bad-faith claim under § 604.18 be included in an initial complaint?—in opposite ways: Subdivision 4(a) answers the question "no—never." Rule 8 answers the question "yes—always." *See Shady Grove*, 559 U.S. at 401 n.4 (explaining that a conflict exists

between state law and the Federal Rules when both sources of law address "the procedural right to maintain" an action in federal court).

True, Rule 8 does not *require* a litigant to state all grounds for relief in his initial pleading. But that is beside the point. Subdivision 4(a) and Rule 8 conflict over whether a claim under § 604.18 *may* be brought in an initial pleading. So "[e]ven if Rule 8(a)(3) does not require a plaintiff to include in a complaint a request for all the relief sought, there is still a conflict between [the state pleading standard] and Rule 8(a)(3), because the rule clearly allows the plaintiff to include [a state law request for relief] in her initial complaint, whereas [state law] prevents her from doing so." *Cohen*, 184 F.3d at 1298 (emphasis removed).

### b. Section 604.18 conflicts with Rule 15

Minnesota law and federal law conflict in the way that they answer another question: Under what circumstances may a complaint that does not include a bad-faith claim under § 604.18 be amended to add such a claim?

Under subdivision 4(a), a plaintiff may never amend a complaint to include a claim under § 604.18 without leave of court. Not only must a plaintiff file a motion seeking leave of the court, but that motion "*must* be accompanied by one or more affidavits showing the factual basis for the motion." § 604.18, subd. 4(a) (emphasis added). The insured may then oppose the motion by submitting "one or more

affidavits showing there is no factual basis for the motion." § 604.18, subd. 4(a). The court may grant the motion only if, after considering the evidence submitted by both parties,[4] "the court finds prima facie evidence in support of the motion." § 604.18, subd. 4(a).

Rule 15 answers the question very differently. A plaintiff may amend a complaint to include a claim under § 604.18 *without* leave of the court, as long as the plaintiff does so within 21 days after serving the complaint or within 21 days after service of the answer, service of a Rule 12(b) motion to dismiss the complaint, or service of a motion under Rules 12(e) or (f). After that deadline passes, a plaintiff must seek leave of the court to amend a complaint, but that leave must be "freely give[n]" unless the amendment would be futile. Amending a complaint to add a § 604.18 claim would

---

[4]A court deciding whether to grant leave to amend a complaint to add a claim for *punitive damages* may consider only evidence submitted by the plaintiff. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 870 F. Supp. 1499, 1502-03 (D. Minn. 1994) ("To determine if plaintiff has made the proper showing, the evidence in support of the motion should be thoroughly examined, without considering evidence submitted in opposition."). But a court deciding whether to grant leave to amend a complaint to add a *bad-faith claim* must examine both the evidence submitted by the insured and the evidence submitted by the insurer. *See Borchardt v. State Farm Fire & Cas. Ins. Co.*, No. 16-CV-0055 (PJS/KMM), 2017 WL 8315883, at *6 n.8 (D. Minn. Apr. 26, 2017) ("The Court can consider evidentiary materials provided by the insurer in opposition to the plaintiffs' motion to amend in determining whether there has been a prima facie showing of bad faith."). This reflects the fact that § 604.18 (the bad-faith statute) expressly permits the motion for leave to amend to be "opposed by the submission of one or more affidavits showing there is no factual basis for the motion," whereas § 549.191 (the punitive-damages statute) contains no similar provision.

be futile if "the claim[] . . . would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998). Thus, "[d]enial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).

Critically, in deciding whether a (proposed) bad-faith claim under § 604.18 would withstand a motion to dismiss under Rule 12(b)(6), the court must restrict its analysis to the four corners of the (proposed) amended complaint, and ask whether the complaint "plead[s] . . . enough facts to state a claim to relief that is plausible *on its face*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). The Court would not consider any evidence. That is because Rule 8 "intentionally avoid[s] any reference to 'facts' or 'evidence' or 'conclusions.'" *Id.* at 575 (citations omitted). Thus:

- Unlike subdivision 4(a), Rule 15 does not require an insured who seeks leave to amend to add a bad-faith claim to submit "one or more affidavits showing the factual basis for the motion." To the contrary, such affidavits would be irrelevant to the court's determination.

- Unlike subdivision 4(a), Rule 15 does not authorize the insurer who opposes a motion for leave to amend to add a bad-faith claim to submit "one or more affidavits showing there is no factual basis for the motion." Again, such affidavits would be irrelevant. And

- Unlike subdivision 4(a), Rule 15 does not provide that a court can grant leave to amend to add a bad-faith claim only if "the court finds prima facie evidence in support of the motion." To the contrary, Rule 15 provides that "[t]he court should freely give leave when justice so requires." A court deciding whether to deny leave on grounds of futility would not look at *any* evidence, much less determine whether "prima facie evidence" supports the proposed bad-faith claim. *See Redeemed Christian Church of God Strong Tower Par. v. Auto Owners Ins. Co.*, No. 17-CV-1379 (WMW/FLN), 2018 WL 2135018, at *4 (D. Minn. May 9, 2018) ("Minn. Stat. § 604.18 imposes a preliminary evidentiary showing and surplus process not contemplated by Federal Rule of Civil Procedure 15.").

Obviously, then, § 604.18 and Rule 15 answer the same question—under what circumstances may a complaint that does not include a bad-faith claim under § 604.18 be amended to add such a claim?—in conflicting ways.[5]

Given that § 604.18 and the Federal Rules conflict, this Court "must . . . confront head-on whether [the Federal Rules] fall[] within the statutory authorization." *Shady Grove*, 559 U.S. at 406.  Unless Rules 8 and 15 violate the Rules Enabling Act, those rules—and not § 604.18—govern Sela's motion to amend his counterclaim to add a bad-faith claim.

### 3.  The Federal Rules are valid under the Enabling Act

The Rules Enabling Act authorizes the Supreme Court to "prescribe general rules of practice and procedure" for the federal courts, 28 U.S.C. § 2072(a), so long as those rules do not "abridge, enlarge or modify any substantive right," § 2072(b).  The

---

[5]The Seventh Circuit's opinion in *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663 (7th Cir. 2008), supports this conclusion.  In *Windy City*, the Seventh Circuit addressed whether a federal district court sitting in diversity should apply Rule 8 or the Illinois Civil Practice Act to a claim brought under state law.  Contrary to the "federal pleading regimen under Rule 8," Illinois law required fact pleading even with respect to non-fraud claims.  *Id.* at 670. When confronted with the two starkly different pleading regimes, the Seventh Circuit found it "clear that a conflict between the federal and state pleading rule does exist."  *Id.* at 671.  Like § 604.18 and Rule 15, the "federal and the state provisions" at issue in *Windy City* "address[ed] the same subject and require[d] adherence to conflicting standards."  *Id.*

Supreme Court has never found that a Federal Rule of Civil Procedure—or, for that matter, any other federal rule of practice and procedure— "abridge[d], enlarge[d] or modif[ied] any substantive right." *See Shady Grove*, 559 U.S. at 407 (plurality opinion) ("[W]e have rejected every statutory challenge to a Federal Rule that has come before us.").

In *Shady Grove*, the Supreme Court addressed a purported conflict between Rule 23 of the Federal Rules of Civil Procedure (the class-action rule) and § 901(b) of the New York Civil Practice Law and Rules. *Shady Grove*, 559 U.S. at 396-97. Unlike Rule 23, § 901(b) prohibited class-action plaintiffs from recovering certain state-law statutory penalties. *Id.* Four justices (led by Justice Ginsburg) found that Rule 23 and § 901(b) did not conflict, and thus that it was unnecessary to address whether Rule 23 was valid. *Id.* at 436-59 (Ginsburg, J., dissenting). Five justices (led by Justice Scalia) found that Rule 23 and § 901(b) did conflict. That finding required the majority to decide whether Rule 23 was valid under the Enabling Act. Unfortunately, though, the five justices could not agree on a mode of analysis. Justice Scalia (writing for a four-justice plurality) applied one approach to determine if Rule 23 was valid, while Justice Stevens (writing only for himself) applied another.

In the wake of *Shady Grove*, the courts of appeals have disagreed about what approach should be taken when deciding whether a Federal Rule is valid under the

Enabling Act. The Tenth Circuit held that, under the analysis prescribed by *Marks v. United States*, 430 U.S. 188 (1977), Justice Stevens's opinion supplies the controlling test. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). The D.C. Circuit, by contrast, held that the *Marks* doctrine does not apply, and that *Shady Grove* produced no controlling opinion. *Abbas*, 783 F.3d at 1337 ("[N]either opinion can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue."). Given the lack of a controlling opinion, the D.C. Circuit applied pre-*Shady Grove* precedent. The Eighth Circuit has not yet weighed in on the issue.

Fortunately, this Court need not decide which approach controls, because under any of the three candidates—the Scalia approach, the Stevens approach, or the pre-*Shady Grove* approach—Rules 8 and 15 are clearly valid as applied in this case.

### a. The Scalia approach

Justice Scalia focused the Enabling Act inquiry on the nature of the Federal Rule. "[I]t is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Shady Grove*, 559 U.S. at 410. In Justice Scalia's view, Federal Rules "rationally capable of classification" as procedural are valid even if they affect a litigant's substantive rights under state law. *Id.* at 406. Justice Scalia's inquiry into Rule 23's validity ended with the determination

that Rule 23 "really regulat[es] procedure"—that is, the "manner and the means by which the litigants' rights are enforced." *Id.* at 407 (cleaned up).

Without question, Rule 8 and Rule 15 (like Rule 23) "really regulate" procedure. Rule 8 regulates the content of a complaint. Rule 15 regulates the process for amending a complaint. Neither rule alters the "rules of decision by which [the] court will adjudicate" the state-law claim. *Id.* (citation omitted). Under Justice Scalia's approach, then, Rules 8 and 15 are unquestionably valid.

### b. The Stevens approach

Justice Stevens focused the Enabling Act inquiry on the nature of the *state* rule—and, in particular, on whether the state rule "function[s] as a part of the State's definition of substantive rights and remedies." *Id.* at 416-17 (Stevens, J., concurring in part and concurring in the judgment). As Justice Stevens explained:

> A "state procedural rule, though undeniably 'procedural' in the ordinary sense of the term," may exist "to influence substantive outcomes," and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy. Such laws, for example, may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim.

*Id.* at 419-20 (citations omitted). When a state procedural rule "defines the scope of [a] substantive right or remedy," *id.* at 420, Justice Stevens said, applying the conflicting

Federal Rule would necessarily "abridge, enlarge or modify" that substantive right or remedy and thus violate the Enabling Act, *id.* at 418.

That said, Justice Stevens cautioned that state procedural rules should displace Federal Rules only rarely. "[T]he bar for finding an Enabling Act problem is a high one." *Id.* at 432. Federal courts should not shy away from applying the Federal Rules based on the "mere *possibility* that a federal rule would alter a state-created right." *Id.* (emphasis added). There must be "little doubt" that a state substantive right would be abridged through application of a Federal Rule before a court finds a violation of the Enabling Act. *Id.*

Justice Stevens agreed with the plurality that the conflict between Rule 23 and § 901(b) did not present one of those rare occasions on which the Federal Rule had to yield. First, Justice Stevens noted that § 901(b) "applies not only to claims based on New York law but also to claims based on federal law or the law of any other State." *Id.* For this reason, Justice Stevens opined that it was "hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.* Second, Justice Stevens turned to legislative history for guidance on whether the New York Legislature intended § 901 to perform a substantive function. Justice Stevens found that the legislative history did not "clearly describe" an intention that § 901(b) define the scope of a substantive right. *Id.* at 433.

Instead, the legislative history showed that § 901(b) served the "classically procedural" function of regulating the ease with which a litigant could bring a claim in state courts. *See id.* at 435. Although Justice Stevens admitted that some might view § 901(b) as limiting a litigant's substantive right to damages, he reasoned that finding the rule to be "so intertwined with a state right or remedy," *id.* at 423, would have required "extensive speculation," *id.* at 436.

This Court believes that Justice Stevens would find that application of Rules 8 and 15 to Sela's motion for leave to amend no more violates the Enabling Act than application of Rule 23 to the lawsuit in *Shady Grove*.

*First*, the text of § 604.18 establishes that the substantive right and the procedural requirements are not so intertwined that the procedural requirements "define[] the scope of th[e] substantive right." The Minnesota Legislature established the substantive right in subdivision 2 (titled "Liability"), which describes what conduct by an insurer gives an insured the right to recover "taxable costs," and subdivision 3 (titled "Damages and costs"), which describes the "taxable costs" to which a successful litigant is entitled. By contrast, in subdivision 4 (titled "Claim for taxable costs"), the Minnesota Legislature merely set forth the procedural steps that an insured must take when pursuing a claim under subdivision 2 to receive the taxable costs identified in subdivision 3.

Subdivision 4(a) does not say a word about what conduct by an insurer gives an insured the right to recover, nor does subdivision 4(a) say a word about what "taxable costs" an insured may recover. Subdivision 4(a) does provide that a motion for leave to amend a complaint must "allege the applicable legal basis" and be accompanied by "one or more affidavits showing the factual basis for the motion," but nothing in subdivision 4(a) gives a litigant or judge any hint as to what must be asserted in order to "allege the applicable legal basis" or "show[] the factual basis." Those terms draw their meaning exclusively from subdivisions 2 and 3. In short, in the words of Justice Stevens, subdivision 4(a) does not "define[] the dimensions of [the] claim itself." *Id.* at 433-34 (citation omitted); *see also Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 465 (6th Cir. 2014) (finding a state pleading rule "procedural in nature" in part because it "did not alter any of the elements of an age-discrimination claim under state law").

Second, § 604.18's legislative history does not "clearly describe a judgment" that subdivision 4(a)'s procedural requirements somehow modify the substantive rights established in subdivisions 2 and 3. There is no evidence in the legislative history—much less "particularly strong" evidence—suggesting that the Minnesota legislature intended subdivision 4(a) to have such an impact. *Shady Grove*, 559 U.S. at 434 (Stevens, J., concurring in part and concurring in the judgment). In fact, the minimal legislative history supports a contrary conclusion. A Minnesota House Report

analyzing the legislation creating the bad-faith cause of action described subdivision 4 as "specif[ying] the *procedure* for an insured to claim taxable costs."  MN H.R. Bill Summ., 2008 S.F. 2822 (Apr. 4, 2008) (emphasis added).  "The mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies."  *Shady Grove*, 559 U.S. at 432.  The legislative history (like the text of the statute) thus supports viewing subdivision 4(a) as procedural.

*Finally*, subdivision 4(a)—like § 901(b) in *Shady Grove*—serves the "classically procedural" function (to quote Justice Stevens) of regulating how easy it is for a litigant to bring a claim.  *Id.* at 435.  The calculation reflected in subdivision 4(a) is the "same sort of calculation that might go into setting filing fees or deadlines for briefs."  *Id.*

For these reasons, the Court concludes that, under the approach described by Justice Stevens, application of Rules 8 and 15 to Sela's motion to amend does not violate the Enabling Act.[6]

---

[6]One difference between § 604.18 and § 901(b) bears mentioning:  The procedural rules established by § 604.18, subd. 4(a) apply only to claims brought under Minnesota law, whereas the procedural rules established by § 901(b) applied to claims brought under the laws of any state.  But in light of the overwhelming evidence that the procedural standards established in subdivision 4(a) do not define the scope of the substantive rights established in subdivisions 2 and 3, the Court believes that Justice Stevens would give little weight to the fact that the procedural standards established in subdivision 4(a) apply only to claims brought under Minnesota law.  *Cf. Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1334, 1336 (11th Cir. 2015) (applying Rule 23

(continued...)

*c. The pre-*Shady Grove *approach*

As noted, the D.C. Circuit has decided that neither the Scalia approach nor the Stevens approach has supplanted pre-existing precedent. After closely examining the three opinions in *Shady Grove*, the D.C. Circuit found that there was no "*Marks* middle ground" or "narrowest opinion." *Abbas*, 783 F.3d at 474. In the absence of a "common conclusion," the D.C. Circuit decided to "follow the Supreme Court's pre-existing precedent"—specifically, *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941). *Abbas*, 783 F.3d at 474.

The *Sibbach* approach essentially mirrors the approach of Justice Scalia. "Under *Sibbach*, any federal rule that 'really regulates procedure' is valid under the Rules Enabling Act." *Id.* (citation omitted). "As the Supreme Court indicated in *Shady Grove* (in a portion of the opinion that spoke for a majority), pleading standards and rules governing motions for summary judgment are procedural." *Id.*

For the reasons this Court has already explained, there is no doubt that Rules 8 and 15 "really regulate[] procedure" and thus are valid under *Sibbach*.

\* \* \*

In conclusion, the Court holds that (1) subdivision 4(a) of Minn. Stat. § 604.18 conflicts with Rules 8 and 15 of the Federal Rules of Civil Procedure; (2) application of

---

[6](...continued)
instead of an Alabama rule which only applied to Alabama claims).

Rules 8 and 15 to Sela's motion for leave to amend his counterclaim does not violate the

Rules Enabling Act; and therefore (3) Sela's motion for leave to amend his counterclaim

to add a bad-faith claim is governed by Rules 8 and 15, and not by § 604.18.

### B. Application

As explained above, Rule 15(a)(2) provides that "[t]he court should freely give

leave" to amend a pleading "when justice so requires."  Justice does not require that

leave to amend be given when the amendment is futile.  An amendment to add a new

claim is futile when the new claim "could not withstand a motion to dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure."  *Zutz*, 601 F.3d at 850 (quoting *Cornelia*

*I. Crowell*, 519 F.3d at 782).  A new claim can withstand a motion to dismiss only if the

proposed complaint or counterclaim "plead[s] . . . enough facts" to make the new claim

"plausible on its face."  *Twombly*, 550 U.S. at 570.

Judge Rau found that Sela's proposed bad-faith claim was not futile (i.e., that it

would survive a motion to dismiss) and thus granted Sela leave to amend his

counterclaim.  Judge Rau's decision was based *solely* on the allegation in the proposed

counterclaim that Selective had acted in bad faith when it rejected Sela's written

demand for appraisal.  Judge Rau said nothing about Sela's other allegations of bad

faith.  ECF No. 111 at 28-30, 31 n.12.

The Court respectfully disagrees with Judge Rau that Selective could be held liable under § 604.18 because it rejected Sela's demand for appraisal. The Court will first explain why it believes that Judge Rau erred, and then describe how the Court will proceed in light of its ruling and the unusual posture of the case.

1. Selective's rejection of Sela's demand for an appraisal

Under § 604.18, a court may award "taxable costs" to an insured if the insured can show both:

(1)     the absence of a reasonable basis for denying the benefits of the insurance policy; and

(2)     that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

§ 604.18, subd. 2(a).

"The first prong is an objective standard that asks whether a reasonable insurer would have denied or delayed payment of the claim under the facts and circumstances." *Friedberg*, 800 F. Supp. 2d at 1025. This prong requires courts to "consider whether the claim was properly investigated and whether the results of the investigation were subjected to reasonable evaluation and review." *Id.*

"The second prong is subjective and turns on what the insurer knew and when." *Id.* "Knowledge of the lack of a reasonable basis may be inferred and imputed to an

insurer where there is reckless indifference to facts or proofs submitted by the insured." *Id.* If coverage of the claim is "fairly debatable," though, "the insurer is entitled to debate it, whether debate concerns a matter of fact or law." *Id.*

Judge Rau concluded that Sela stated a plausible claim under § 604.18 because, after Sela submitted a written demand for appraisal, Sela failed "to abide by its contractual obligation[]" to submit the dispute to appraisal. ECF No. 111 at 29. The Court respectfully disagrees that Selective's refusal to submit this dispute to appraisal could be found to be actionable under § 604.18.

Appraisal is a means for resolving factual disputes over the *amount* of a loss. Appraisal is not a means for resolving legal disputes over whether an insurer must *cover* a loss. An appraiser can determine the amount of any check that the insurer must cut, but an appraiser cannot determine whether an insurer must cut a check in the first place. *See Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) ("The scope of appraisal is limited to damage questions while liability questions are reserved for the courts."); *Auto-Owners Insurance Co. v. Second Chance Investments, LLC,* 812 N.W.2d 194, 199-200 (Minn. Ct. App. 2012) ("Appraisers do not have the authority to determine liability under an insurance policy. . . . The prevailing rule is that 'the sole purpose of an appraisal is to determine the amount of damage.'" (citation omitted)).

Here, Selective declined to indemnify Sela under the Anti-Fraud Provision because it found that he had "[i]ntentionally concealed or misrepresented [a] material fact or circumstance." ECF No. 17-1 at 26. Specifically, Selective found that Sela made numerous false or misleading statements about material facts, such as when he said that certain property had not been damaged at all by the June 2010 hailstorm and when he said that other property that had been damaged by the June 2010 hailstorm had been repaired or replaced. Second Am. Compl. ¶¶ 23-30.

Selective was not required to submit this dispute to a panel of appraisers. The dispute between Selective and Sela is not a dispute over "the amount of loss," such as a dispute over how much it would cost to replace the roof on Sela's home. Rather, the dispute between Selective and Sela is a dispute over whether Selective has any obligation to indemnify Sela *regardless* of "the amount of loss." This is a coverage dispute—a coverage dispute that turns on whether Sela intentionally made false statements about what was damaged in the June 2010 hailstorm and about what he repaired or replaced after that hailstorm. Resolving this dispute will require determinations about (1) exactly what Sela said to Selective about the damage caused by the June 2010 hailstorm; (2) exactly what Sela said to Selective about Sela's own actions following that hailstorm; (3) whether Sela's statements were false; and (4) whether Sela knew that his statements were false at the time that he made them. These

determinations are not within the scope of the Appraisal Provision—and, indeed, are beyond the capabilities of appraisers. An appraiser knows how much it will cost to replace vinyl siding; an appraiser does not know how to resolve a dispute about what Sela told Selective about his actions five years earlier or about what was on Sela's mind when he made that statement.

For these reasons, the Court holds that Judge Rau erred in finding that Sela's allegation that Selective refused to submit the dispute to appraisal stated a plausible bad-faith claim under § 604.18. Again, what Selective and Sela dispute is whether there is *any* coverage, and coverage disputes cannot be resolved by appraisers. *See Trout Brook South Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1041 (D. Minn. 2014); *see also* Steven Plitt et al., *Couch on Insurance* § 212:13 (June 2018 update) ("[Q]uestions concerning policy defenses or coverages are not to be addressed by the appraisers."). That includes disputes over whether the insured has forfeited all coverage by engaging in some kind of fraud. *See Hunstad v. State Farm Fire & Casualty Co.*, No. 15-CV-3656 (PAM/SER), 2016 WL 3014653, at *2 (D. Minn. May 24, 2016) (stating that an appraisal panel does not have authority to decide whether the insured's allegedly fraudulent conduct precludes insurance coverage); *see also Couch on Insurance* § 212:13 (June 2018 update) ("To illustrate, an insurer's claim that it voided the homeowner's policy in light of suspicious circumstances surrounding a fire at the home

was an issue of coverage and, therefore, for the court, not the appraisal panel, to resolve.").

Even if this Court is incorrect in its construction of the policy—and thus even if Selective erred in rejecting Sela's demand for an appraisal—Sela would still not state a plausible bad-faith claim under § 604.18. Bad faith does not "arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect." *Friedberg*, 800 F. Supp. 2d at 1027. Rather, bad faith arises only when the insurer has no "reasonable basis" for its construction of the policy. The fact that this Court *agrees* with Selective's interpretation of the policy is strong evidence that Selective's interpretation was at least reasonable. Nothing in Sela's pleadings suggests that Selective knew (or acted in reckless disregard of the fact) that it was required to submit this dispute to appraisal.

There is yet another problem with finding that Selective's refusal to submit this dispute to appraisal gives Sela a plausible bad-faith claim. Section 604.18 does not provide a cause of action against any insurer who acts unreasonably in any way. Rather, § 604.18 creates a cause of action against an insurer who acts unreasonably in *denying a claim*—or, as the statute puts it, in "denying the benefits of the insurance policy." § 604.18, subd. 2(a). The Minnesota Legislature intended § 604.18 to "provide[] a remedy for an insured when an insurer denies a first-party claim without a reasonable

basis." *Wilbur v. State Farm Mut. Auto. Ins. Co.*, 892 N.W.2d 521, 524 (Minn. 2017). Courts thus must determine whether the "denial of the claim" was unreasonable when determining whether an insured can recover under § 604.18. *Friedberg*, 800 F. Supp. 2d at 1026.

Obviously, whether Selective had a reasonable basis for denying Sela's claim must be assessed based on the circumstances existing at the time that Selective denied Sela's claim. What happened *after* Selective denied Sela's claim is irrelevant. *See Collins v. Depositors Ins. Co.*, No. 12-CV-3133 (PAM/LIB), 2013 WL 12142580, at *6 (D. Minn. Dec. 2, 2013) (refusing to consider information that the insurer did not learn until after its coverage position had been reached and a lawsuit filed); *Cich v. Nat'l Life Ins. Co.*, No. 11-CV-0742 (DWF/JJG), 2012 WL 12848436, at *2 n.7 (D. Minn. Feb. 15, 2012) (holding that what an insurer does after denying a claim is "simply irrelevant" because "[§ 604.18] applies only to the claims decision, not subsequent actions in [a] lawsuit").

Selective denied Sela's insurance claim on December 2, 2016. Am. Ans. ¶ 63 ("On December 2, 2016, Selective denied coverage and refused to pay any amount owing under the Policy for the property loss to the Property caused by the 2015 storm."). Sela did not submit a written demand for appraisal until December 12, 2016, almost two weeks later. Am. Ans. ¶ 66 ("After receiving Selective's long-delayed coverage position, on December 12, 2016, Mr. Sela made a written demand for appraisal

of the loss.").  Selective's refusal to comply with Sela's demand for appraisal on

December 12 is obviously irrelevant to whether Selective had a reasonable basis for

denying Sela's claim on December 2.

In sum, the Court holds that Selective cannot be held liable under § 604.18 for

rejecting Sela's written demand for an appraisal.  Thus, any bad-faith claim premised on

that rejection would be futile.

### 2.  Sela's motion for leave to amend his counterclaim

That leaves the question of whether Sela should be given leave to amend his

counterclaim to bring a bad-faith claim premised on his other allegations of bad faith

(an issue that Judge Rau did not address).  That is a tricky question, given the unusual

posture of this case.

Had Sela known at the time that he moved for leave to amend his counterclaim

that this Court would find that the motion was governed by Rules 8 and 15—and not by

§ 604.18, subd. 4(a)—the parties presumably would have proceeded in the following

manner:

First, Sela would have moved under Rule 15(a)(2) for leave to amend his

counterclaim to include a bad-faith claim.  Sela would have known that his proposed

bad-faith claim would have to meet the pleading standards of *Ashcroft v. Iqbal*, 556 U.S.

662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In particular, Sela

would have known that his proposed counterclaim would have to plead "enough facts to state a claim to relief that is plausible *on its face*." *Twombly*, 550 U.S. at 570 (emphasis added). Sela would not have submitted any affidavits or other evidence because he would have known that Judge Rau would look only at what was contained within the four corners of the proposed counterclaim.

Second, Selective would have opposed the motion, arguing that the proposed amendment would be futile because the proposed bad-faith claim could not withstand a motion to dismiss. Selective would also not have submitted any affidavits or other evidence because it, too, would have known that Judge Rau's review would be limited to the four corners of the proposed counterclaim.

Finally, Judge Rau would have ruled on Sela's motion. Judge Rau would have read the proposed counterclaim and decided whether, on its face, it pleaded sufficient facts to state a plausible bad-faith claim.

Of course, this Court could *now* examine Sela's proposed amended counterclaim and decide whether it pleads a plausible bad-faith claim. But that would be unfair to Sela. At the time that he filed his motion for leave to amend, Sela reasonably assumed (based on the case law of this District) that he was proceeding under subdivision 4(a) of § 604.18. Thus, Sela reasonably assumed that this Court would not be deciding whether

his proposed counterclaim pleaded a plausible bad-faith claim, but instead deciding

whether his affidavits established "prima facie evidence in support of the motion."

Reflecting this understanding, Sela's proposed bad-faith claim is relatively brief

and is pleaded in a relatively conclusory fashion. By contrast, the affidavits and other

evidence that he submitted are detailed and voluminous. If this Court were to look

only at the face of Sela's proposed counterclaim—and not at his affidavits—the Court

would find that Sela has not pleaded a plausible bad-faith claim.

So what should this Court do?

On the one hand, it would be unfair to deny Sela leave to amend his

counterclaim because of his failure to meet the *Iqbal/Twombly* standard when he could

not have anticipated that this Court would be *applying* the *Iqbal/Twombly* standard. This

suggests that the Court should give Sela a chance to move again for leave to amend his

counterclaim to add a bad-faith claim. Sela could then attempt to meet the

requirements of *Iqbal* and *Twombly* by shifting some allegations from his affidavits into

his pleading.

On the other hand, going through another round of briefing about whether Sela

should be allowed to amend his counterclaim to add a bad-faith claim seems like a

waste of time. This case is two years old. Discovery is over. The parties are ready to

move for summary judgment. Given the posture of the case, the Court believes that,

rather than continue to litigate over the question of whether Sela can adequately *plead* a

bad-faith claim (a question that focuses on the face of the pleadings), the Court and the

parties should just cut to the chase and address the question of whether Sela can *recover*

on a bad-faith claim (a question that focuses on the evidence).

For that reason, the Court will give Sela leave to file his proposed "Amended

Answer to Second Amended Complaint and Counterclaims" (ECF No. 68-1).  Selective

can then move for summary judgment on the bad-faith claim, the Court can review the

evidence in the record, and the Court can decide whether a reasonable jury could return

a verdict in Sela's favor on that claim.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Selective's objection [ECF No. 118] to the order on the motion to amend

        [ECF No. 111] is OVERRULED IN PART AND SUSTAINED IN PART.

        That order is VACATED.

2.      For the reasons stated in this order, Sela's motion for leave to amend his

counterclaim to add a claim for bad faith under Minn. Stat. § 604.18 [ECF

No. 88] is GRANTED.


Dated:  November 27, 2018                              s/Patrick J. Schiltz
                                                      Patrick J. Schiltz
                                                      United States District Judge