UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | Case No. 16-CV-4077 (PJS/SER) |
| Plaintiff/Counter-defendant, | |
| v. | MEMORANDUM |
| AMIT SELA, | |
| Defendant/Counter-claimant. | |

Kristi K. Brownson, Joseph F. Lulic, and Olivia Moreland Cooper, BROWNSON NORBY, PLLC, for plaintiff/counter-defendant.

Christopher H. Yetka, LARKIN HOFFMAN DALY & LINDGREN, LTD., and Christopher J. Knapp, BARNES & THORNBURG LLP, for defendant/counter-claimant.

Defendant Amit Sela ("Sela") owned a home that was insured by plaintiff Selective Insurance Company of South Carolina ("Selective"). Sela submitted a property-loss claim to Selective after his home was damaged by hail. Selective investigated the claim and then filed this action, alleging that Sela made fraudulent misrepresentations during its investigation and thus was not entitled to indemnification. Sela counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad-faith denial of insurance benefits in violation of Minn. Stat. § 604.18.

The case was tried to a jury during the week of July 22, 2019. Prior to trial, Selective filed a motion in limine asking, in essence, that Sela's claim for breach of the implied covenant be dismissed. ECF No. 159 at 9-10. The Court granted Selective's motion from the bench at the final pretrial conference. *See* ECF No. 170. Because Minnesota law regarding the implied covenant of good faith and fair dealing has recently been muddled by a decision of the Minnesota Court of Appeals, this Court issues this written memorandum explaining the basis for its dismissal of Sela's implied-covenant claim.

There is no doubt that, under Minnesota law, every contract of insurance contains an implied covenant of good faith and fair dealing. *See In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) ("Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing . . . ."). The crucial question, though, is what does that mean? Exactly what obligations are imposed by the implied covenant?

Under Minnesota law, the implied covenant clearly imposes two obligations on insurance contracts (and all other contracts, save employment contracts[1]):

---

[1] *See Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986) ("Moreover, we have not read an implied covenant of good faith and fair dealing into employment contracts.").

First, it is clear that the implied covenant is breached when a party to a contract "'unjustifiably hinder[s]'" the other party's performance of the contract. *In re Hennepin Cty.*, 540 N.W.2d at 502 (quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984)). But this obligation is essentially irrelevant in a case involving the denial of insurance benefits. Selective's failure to pay benefits to Sela did not "unjustifiably hinder" *Sela's* performance of *his* obligations under the insurance contract.

Second, it is clear that the implied covenant is breached when a party to a contract acts "dishonestly, maliciously, or otherwise in subjective bad faith" in exercising unqualified discretion that is given to that party in the contract. *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 968 (D. Minn. 2007). In other words, when a contract explicitly gives one party discretion over some aspect of the contracting parties' relationship, and the contract does not place any restriction or qualification on that discretion, then the implied covenant prevents the party who has the unqualified discretion from using it "dishonestly, maliciously, or otherwise in subjective bad faith." In the *BP Products* case, for example, the contract gave BP the sole, unqualified discretion to establish the price of gasoline sold at TCS stores. *Id*. at 960. This Court found that, under the implied covenant, BP could not act "dishonestly, maliciously, or otherwise in subjective bad faith" in exercising that pricing discretion. *Id.* at 968.

This obligation, too, is irrelevant in a case involving the denial of insurance benefits. Obviously, an insurance contract does not give the insurer discretion to decide whether to pay benefits; such a contract would be of little use to the policyholder. Instead, the contract obligates the insurer to pay benefits under specified circumstances. The central question in a denial-of-benefits case is whether the insurer has breached that explicit contractual obligation.

Because neither of these two obligations imposed by the implied covenant of good faith and fair dealing do policyholders any good in denial-of-benefits cases, Sela argues that the implied covenant in insurance contracts should be deemed to include an additional, broader obligation—in the words of Sela's trial brief, an obligation on the part of the insurer to act "reasonabl[y]" and "properly" in making a decision about whether to pay benefits. ECF No. 150 at 4, 5. In support of his argument, Sela does not rely primarily on Minnesota law. Instead, Sela relies primarily on comment d to § 205 of the Restatement (Second) of Contracts. That comment reports that some courts in some states have construed the implied covenant to prohibit various types of wrongful conduct, including conduct that amounts to "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Restatement (Second) of Contracts § 205 cmt. d (1981).

For a number of reasons, the Court does not believe that the Minnesota Supreme Court would hold that every contract of insurance contains an implied covenant that imposes a broad duty on insurers to act "reasonably" or "properly" in handling claims.

Policyholders have been making claims—and insurers have been denying claims—since Minnesota became a state in 1858. The Minnesota Supreme Court and the Minnesota Court of Appeals have issued hundreds of decisions in denial-of-benefits cases. And yet, with one arguable exception (discussed below), neither the Minnesota Supreme Court nor the Minnesota Court of Appeals has ever suggested that the implied covenant of good faith and fair dealing imposes on insurers a broad obligation to act "reasonably" in handling claims. Indeed, the very reason why the Minnesota Legislature enacted Minn. Stat. § 604.18 in 2008 was because the common law did *not* provide a cause of action against insurers who acted unreasonably in handling claims.

Minnesota courts have held, time and again, that the only question in a denial-of-benefits case is whether the insurance contract requires the insurer to pay the claim. It does not matter why the insurer denied the claim, and it does not matter whether the insurer's investigation was reasonable or unreasonable. See *Saltou v. Dependable Ins. Co.*, 394 N.W.2d 629, 633 (Minn. Ct. App. 1986) ("The failure to pay an insurance claim in itself, no matter how malicious, does not constitute a tort; it constitutes a breach of an

insurance contract."). All that matters is whether the language of the insurance contract requires the insurer to pay the claim.

Minnesota courts have also held, time and again, that if an insurer does breach its obligation to pay benefits, the only remedy available to the policyholder is recovery of the benefits due under the contract. The policyholder does not get attorney's fees,[2] or compensation for the time he spent trying to convince his insurer to pay the benefits, or damages for the emotional distress that he suffered because the insurer wrongly denied his claim.[3] Denial-of-benefits cases are contract cases, not tort cases. *See Saltou*, 394 N.W.2d at 633; *see also Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975) ("A malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action."). If the insurer was not obligated to pay benefits under the terms of the contract, then the policyholder recovers nothing. If the insurer was obligated to pay benefits under the terms of the contract, then the policyholder recovers those benefits, but nothing more—even if the insurer's decision to deny benefits was unreasonable.

---

[2]*See LaValley v. Nat'l Family Ins. Corp.*, 517 N.W.2d 602, 605 (Minn. Ct. App. 1994) ("[A]ttorney fees are not recoverable in a declaratory judgment action in which the insured seeks recovery of first party benefits.").

[3]*See Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 (Minn. 1979) ("We have consistently held, in the absence of specific statutory provision therefor, that extra-contract damages are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort.").

As noted, the fact that the common law does not impose a broad obligation of reasonableness on insurers is the reason why the Minnesota Legislature took action in 2008. After much study and debate—and after much input from the plaintiffs' bar, the insurance industry, and others—the Minnesota Legislature enacted Minn. Stat. § 604.18, which specifically addresses the problem of insurers acting unreasonably in denying benefits due under an insurance policy. The Legislature:

- specified exactly when an insurer can be found liable for acting unreasonably in denying insurance benefits, § 604.18, subd. 2;

- specified exactly what remedies are available against an insurer who acts unreasonably in denying insurance benefits, § 604.18, subd. 3; and

- specified a process for a court to make a determination regarding the reasonableness of an insurer's denial of insurance benefits, § 604.18, subd. 4.[4]

If the Minnesota Supreme Court was unwilling to find that the implied covenant imposed a broad obligation on insurers to act reasonably prior to 2008, it seems extremely unlikely that it will do so now, in the wake of the enactment of § 604.18. But just last year, the Minnesota Court of Appeals suggested for the first time that the

---

[4]This process involves having the judge, not the jury, decide whether the insurer acted reasonably—in other words, keeping evidence and argument about the reasonableness of the insurer's claims handling *away* from a jury sitting on a denial-of-benefits case.

implied covenant in insurance contracts might impose broad obligations of the type described in the Restatement. The Court of Appeals did so in the case of *Western National Mutual Insurance Company v. Prospect Foundry*, No. A17-0992, 2018 WL 1787687 (Minn. Ct. App. Apr. 16, 2018).

In *Prospect Foundry*, the Minnesota Court of Appeals acknowledged that "Minnesota's appellate courts have not settled whether the state's common law limits an implied-covenant claim only to the unjustifiable hindrance of performance or if this claim could include the behaviors in Section 205, comment d, of the Restatement (Second) of Contracts." *Id.* at *4 n.3. The court then abruptly said: "Minnesota has not adopted this part of the Restatement (Second) of Contracts in statute or in caselaw, but we find its guidance persuasive." *Id.*

With due respect to the Minnesota Court of Appeals, the Court does not find *Prospect Foundry* to be "persuasive" for a number of reasons:

First, the key language quoted above appears in a three-sentence footnote in an unpublished decision, and the language is dicta. The *Prospect Foundry* panel had already found that "Western National unjustifiably hindered the contracts." *Id.* at *4. Thus, there was simply no reason for the panel to decide whether Western National breached any *other* obligations that may or may not have been imposed by the implied covenant.

Moreover, this footnote appears in a section of the opinion in which the *Propsect Foundry* panel finds that the trial court did not abuse its discretion in charging the jury regarding the implied covenant. But the instruction given by the trial court was not patterned after the Restatement; instead, the trial court instructed the jury only that, under the implied covenant, Western National had to "act[] honestly" in performing a particular part of the insurance contract (a part that required Western National to calculate Prospect Foundry's entitlement to dividend payments in a particular manner). *Id.* Again, the question of whether Minnesota would recognize the broader obligations described by the Restatement was not even before the *Prospect Foundry* panel.

Second, as previously noted, the *Prospect Foundry* panel's comments about the Restatement came in the context of deciding whether the trial court had abused its discretion in giving an instruction regarding the implied covenant. Thus, the panel was applying a highly deferential standard of review, not deciding the issue de novo.

Third, this Court simply does not understand what the *Prospect Foundry* panel was trying to say about the scope of the implied covenant. Comment d to § 205 of the Restatement describes a wide variety of obligations that various courts in various states have read into the implied covenant. A duty not to "evade the spirit of the bargain" is not the same as a duty not to "slack off," and a duty not to "slack off" is not the same as a duty not to "abuse the power to specify terms." This Court has no idea what the

*Prospect Foundry* panel meant when it said that it found the "guidance" of comment d to be "persuasive." Does that mean that *every* duty described by comment d is part of the implied covenant? *Some* of the duties? Only the duty on which the trial court instructed in *Prospect Foundry*?

Finally, nowhere in its opinion does the *Prospect Foundry* panel explain *why* it finds the "guidance" of comment d to be "persuasive." Nowhere does the court explain why over a century of common law should be upended, or explain how the common-law duties that it may or may not intend to impose can be reconciled with § 604.18, or grapple with the many questions that would arise if every insurance contract in Minnesota was deemed to include one or more of the broad obligations described in comment d.

For example, if every insurance contract in Minnesota included an implied covenant to act diligently or not to slack off in handling a claim, what would be the remedy for a breach of that obligation? Take this case, for example. Suppose that the jury had found that Sela made material misrepresentations and thus was not entitled to any benefits under the insurance contract. If the jury also found that Selective did not act diligently in reaching this (correct) conclusion, could Sela—someone found to have tried to defraud his insurer—collect damages for breach of the implied covenant? That seems unlikely.

In fact, the jury found that Sela did not make material misrepresentations, and thus Sela will be awarded every penny of the benefits to which he is entitled under the insurance contract. If the jury had also found that Selective had slacked off in reaching its (incorrect) conclusion, would Sela be entitled to additional damages—above and beyond the benefits to which he is entitled under the insurance contract? Would he get his attorney's fees? Would he get compensation for his emotional distress? That, too, seems unlikely, given the century of case law that the Court has described, and given § 604.18.

The bottom line is that Minnesota has decided to address the issue of unreasonable claims handling through § 604.18, and not by importing broad reasonableness obligations into insurance contracts via the implied covenant of good faith and fair dealing. Sela's claim under § 604.18 for bad-faith denial of insurance benefits will be tried to the Court beginning on December 2, 2019. ECF No. 185. If Sela can prove that Selective did not have a "reasonable basis" for denying his claim and that the person or persons at Selective who denied the claim "knew of the lack of a

reasonable basis," then he can recover significant damages and attorney's fees under § 604.18.  If he cannot prove these things, then he can recover only the benefits due under the insurance contract.

Dated: August 16, 2019 s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge